STATE ex rel. COBB, Atty. Gen., et al. v. MILLS, Judge.

No. A 10678. Nov. 14, 1945.

(163 P. 2d 558; 167 P. 2d 669.)

Rehearing Denied March 27, 1946.

156

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Warren H. Edwards, Co. Atty., of Oklahoma City, for petitioner.

George Miskovsky, of Oklahoma City, for respondent.

BAREFOOT, P. J.  This is an original proceeding in which the State of Oklahoma seeks a writ of prohibition directed to the respondent, Clarence M. Mills, judge of the district court of Oklahoma county, to prohibit said judge from entering an order of dismissal in two cases pending in such district court, wherein one Davis was charged in each of said cases with the crime of manslaughter.

Attached to the petition is a statement of facts and bill of exceptions, prepared and signed by the trial judge at the suggestion of the petitioner, and which simplifies the record.  There is no dispute as to the facts in this case, and it is to be decided solely upon a question of law.

The only question presented by this proceeding is the correct construction and interpretation to be placed upon the so-called "double jeopardy" statute, 21 O. S. 1941 § 25 which provides:

"Whenever it appears upon the trial that the accused has already been acquitted or convicted upon any criminal prosecution under the laws of another State, government or country, founded upon the act or omission in respect to which he is upon trial, this is a sufficient defense."

158

Respondent contends that by the special wording of the above statute, it is his imperative duty to sustain the motion filed by the defendant Davis to dismiss the manslaughter charges pending in the district court of Oklahoma county, for the reason that the said Davis had, prior thereto, been tried and acquitted by a general army court-martial, sitting at Will Rogers Army Air Field, in Oklahoma county, which involved charges growing out of the same facts which were the basis of the charges filed in the state court.

Counsel for respondent raises the question of the right of the court to issue a writ of prohibition under the facts in this case.

This question has been before this court in two very late cases, and has also been passed upon recently by the Supreme Court of this state. We refer to the cases of In re Strauch, 80 Okla. Cr. 89, 157 P. 2d 201, and Bennett v. District Court of Tulsa County, 81 Okla. Cr. 351, 162 P. 2d 561; and Oklahoma Tax Commission v. Clendinning, 193 Okla. 271, 143 P. 2d 143, 151 A. L. R. 1035.

In the Bennett Case we discussed very fully the right of this court to grant the writ of prohibition, and when it will do so. It is unnecessary to again review the authorities and quote from those decisions. We are of the opinion that the facts in the instant case are such that justify us in assuming jurisdiction to decide the question here presented, upon its merits.

The stipulated facts are that on June 22, 1945, at about 3:34 in the morning, Edward H. Davis, a Lieutenant in the United States Army and stationed at Will Rogers Army Air Field, was operating an automobile within the corporate limits of Oklahoma City, Okla. He was not engaged in any military mission, and was not

within any military area. While so driving said car, he drove into a section of a street which was "guarded by warning lights and flags, and in which two civilian employees of the Oklahoma Street Railway Company were at work." The automobile struck and killed both of said employees.

The Lieutenant was taken into custody by Oklahoma City policemen, but was, on the following afternoon, turned over by them to the military police. He was taken to Will Rogers Army Air Field, where he was stationed as a member of the United States Army.

One June 23, 1945, complaints were duly filed before a justice of the peace in Oklahoma county, charging the Lieutenant with manslaughter in the killing of said persons.

On July 17, 1945, the said Edward H. Davis was tried before a general court-martial at Will Rogers Army Air Field, pursuant to an accusation charging him with "violation of the 93rd Article of War," 10 U.S.C.A. § 1565, and containing two specifications accusing the defendant of negligently and unlawfully killing the aforesaid two persons while driving in a grossly negligent manner. The court-martial proceedings resulted in the entry of the following order:

"Neither the prosecution nor the defense having anything further to offer, the court was closed, and upon secret written ballot, two-thirds of the members present at the time the vote was taken not concurring in any finding of guilt, finds the accused:

| | |
|---|---|
| "Of specification 1 of the charge: | Not Guilty |
| "Of specification 2 of the charge: | Not Guilty |
| "Of the charge: | Not Guilty |

"The court was opened and the president announced that the accused was acquitted upon all specifications and the charge."

It was further stipulated that the defendant in such proceedings was given preliminary hearings in the two charges on complaints filed in the magistrate's court of Oklahoma county, and was bound over to the district court; and that two informations had been filed in the district court of Oklahoma county, charging him in each with the crime of manslaughter in the second degree.

The defendant then filed in each of said cases a motion to quash, and motion to dismiss on the ground of former jeopardy, based upon said court-martial proceeding, and the acquittal of defendant, as above stated.

Petitioner then alleges:

"That said motions came on for hearing before respondent as judge of the district court of Oklahoma County on the 17th day of August, 1945, and said cases were consolidated for the purpose of hearing said motions. That at the conclusion of such hearing respondent announced his intention to sustain said motions to dismiss and to enter such orders of dismissal and discharge of the defendant on September 17, 1945, unless prohibited by this court from so doing. A copy of the "Bill of Exceptions," signed and filed by respondent setting forth his findings and intention to dismiss said cases, is hereto attached, marked "Exhibit A" and made a part hereof."

Upon the above statement of facts it is contended by the state that a writ of prohibition should be granted prohibiting respondent as district judge of Oklahoma county from entering an order of dismissal and discharge of the defendant, Edward H. Davis, and directing that said cases be set for trial in their regular order.

The position of the state is well stated in its petition, filed in this court, wherein it is said:

"Petitioner alleges that a 'court martial' is not a 'court' within the meaning of the term as contained in the

Constitution and statutes of the State of Oklahoma; that a court martial is a tribunal of special and limited jurisdiction whose proceedings and jurisdiction are subject to collateral attack; that it is a part of the executive and not of the judicial branch of the government; that a proceeding before such court martial is not 'criminal prosecution' within such constitutional and statutory provisions; that a finding of 'not guilty' by such court martial is not an 'acquittal within the terms of such Constitution and statute, and cannot constitute a bar or a basis for a plea of former jeopardy to a prosecution in the courts of this state; that an order of the district court entered as announced in the foregoing bill of exceptions will constitute an unauthorized application of judicial force and will deprive the State of Oklahoma of its right under the Constitution and statutes to prosecute a defendant guilty of two crimes of homicide.

"Petitioner further alleges and states that such dismissal of such prosecutions by respondent, if permitted, will leave the petitioner without sufficient remedy; that an appeal from such dismissal and discharge of the defendant would not constitute an adequate remedy and preserve the rights of the state."

The following constitutional and statutory provisions relate to the question of former jeopardy:

Art. 2, § 21 of the Constitution:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

22 O. S. 1941 § 14 provides:

"No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and duly convicted or acquitted, except as hereinafter provided for new trials."

22, § 130 provides:

"When an act charged as a public offense is within the jurisdiction of another Territory, county or state, as well as this state, a conviction or acquittal thereof in the former is a bar to a prosecution therefor in this state."

Sec. 522 of the same Title provides:

"When the defendant shall have been convicted or acquitted upon an indictment or information, the conviction or acquittal is a bar to another indictment or information for the offense charged in the former, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that indictment or information."

But the statute which respondent contends is directly applicable and by the terms of which defendant is entitled to be discharged is 21 O. S. 1941 § 25, hereinbefore quoted. This section of our statute has been under consideration by this court only one time, and that case is relied upon by the respondent. It is La Forge v. State, 28 Okla. Cr. 37, 228 P. 1111, which will be hereinafter considered.

The state in its brief cites 15 Am. Jur. (Criminal Law) p. 72, § 399, as follows:

"A single act may constitute a transgression of both civil and military law, and consequently, make the offender amenable to punishment by both civil and military authority. Hence, a civil prosecution resulting in acquittal is not a bar to a prosecution under military law, and a trial and acquittal by a court martial is not a bar to a prosecution by the proper civil authorities. Although the defendant in such cases is charged with the same act in both instances, nevertheless the prosecutions are not for the same offense, since the act constitutes a transgression of distinct laws and an offense under each law. This rule, however, is strictly limited to the case of a single act which infringes both the civil and the military law in

such a manner as to constitute two distinct offenses, one of which is within the cognizance of the military courts and the other a subject of civil jurisdiction. An acquittal by a court-martial is a bar to subsequent prosecution in a civil court for the same acts constituting the same offense when both courts derive their authority from the same government."

We have carefully examined this section, and the cases cited in 11 Am. & Eng. Ann. Cases, p. 640. In these cases a clear distinction is made where the offense committed was a violation of both the civil and military law, and that for this reason an acquittal by one is not a bar to prosecution by the other. These cases hold that where the trial is for identical offenses and the charges are the same acts, that an acquittal by a court-martial is a bar to a subsequent prosecution in a civil court.

This principle is well illustrated in the case of In re Stubbs, C. C. Wash., 133 F. 1012, 1013, where the court says:

"Although the act described in the specification of the charge upon which the petitioner was brought to trial before the court-martial is identical with the act alleged in the information for murder, the elements constituting the offense charged are radically different. After having surrendered him to the civil authorities, his military superiors could not lawfully deal with the petitioner for murder, manslaughter, or a criminal assault considered as a crime against society in general; but it is equally true that the superior court had no jurisdiction to adjudicate any question with respect to the petitioner's conduct as a soldier. The exactions of military discipline are such that an act, if committed by a civilian, may not be criminal, but, if committed by a soldier on duty, or in a military camp, may constitute a military offense, by reason of the relationship of the actor to the army, and the time, place, and circumstances of the act. The Constitution of the United States contains an absolute guaranty that no per-

son shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' Amendments, art. 5. This record, however, does not present a case to which that clause of the Constitution is applicable. In the interpretation of the Constitution, and in enforcing its provisions, strict attention must be given to the accurate meaning of the words of this supreme law; and in this connection it is to be observed that the words 'same offense' found in this clause of the Constitution are not synonymous with the words 'same act,' and, since more than one offense may be actually committed by a single act, the Constitution does not shield the perpetrator from punishment for other offenses when he has been convicted or acquitted of one, although it does exempt him from a second prosecution for that identical offense. The sixty-second article of war, upon which the second prosecution is founded, excludes capital crimes, and from the record it is manifest that when the petitioner was arraigned before the court-martial special care was taken to charge him with an offense different from the one of which he was acquitted by the superior court. Although the same act is specified, the gist of the offense charged is unsoldierly conduct by a soldier, subversive of military discipline. For that offense the petitioner continued to be amenable to military law, notwithstanding the verdict of the jury declaring him to be innocent of the alleged violation of the laws of the State. 17 Amer. & Eng. Enc. Law (2nd ed.) pp. 604, 605; Cross v. [State of] North Carolina, 132 U. S. [131], 139, 10 S. Ct. 47, 33 L. Ed. 287; Steiner's Case, 6 Op. Atty. Gen. 413; Howe's Case, Id. 506. The charge and specification does not accuse the petitioner of any willful or felonious act, but I cannot assent to the proposition advanced in the petitioner's behalf that the facts alleged do not constitute an offense cognizable by the court-martial. An assault with a lethal weapon and the infliction of a mortal wound by one soldier upon another, with particulars of time and place, is clearly stated, and that is amply sufficient to support the charge of a crime comprehended by the sixty-second article of war."

The defendant in that case, subsequent to his ac-

quittal of the crime of murder in the civil court, was tried by a general court-martial on the charge "of conduct to the prejudice of good order and military discipline, in violation of the sixty-second article of war." He was found guilty and his punishment was a sentence to be dishonorably discharged from the service of the United States, and to be imprisoned for a term of five years, the court holding that this was a separate offense from that charged in the civil court, and that defendant was not twice put in jeopardy for the same offense. United States v. Clark, C. C. Mich., 31 F. 710; In re Fair, C. C. Neb., 100 F. 149.

Under the latter part of the section above quoted (15 Am. Jur. § 399) is cited the case of Grafton v. United States, 206 U. S. 333, 27 S. Ct. 749, 51 L. Ed. 1084, 11 Ann. Cas. 640, to which reference will hereafter be made.

The state in its brief contends that a trial by court-martial is not a criminal prosecution within the meaning of section 17 of article 2 of the Constitution, which provides:

"No person shall be prosecuted criminally in courts of record for felony or misdemeanor otherwise than by presentment or indictment or by information. No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination. Prosecutions may be instituted in courts not of record upon a duly verified complaint."

And section 20 of the same Article provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, that the venue may be changed to some other county of the State, on the application of the ac-

cused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

The contention being:

"A court-martial proceeding would not comply with the provisions of this section and constitute a 'criminal prosecution' thereunder."

It is also stated:

"It thus appears that the sole support of the defendant Davis' motions for dismissal of the cases against him, and the proposed order of respondent sustaining said motions, must be found in section 25, supra, of our statutes. It will be necessary that said section be so construed as to include court martial proceedings and to establish in this State a rule never before existing in any other state and contrary to that which would be applied by military authorities if the first trial had been in our State court. Certainly this construction of section 25 extending it far beyond the provisions of our Constitution and other statutes is not to be adopted unless very clearly intended. Has a defendant tried by court-martial 'been acquitted or convicted upon any criminal prosecution under the laws of another state, government or country'? We do not believe so."

Two Oklahoma cases are cited by the state: Yoder v. State, 66 Okla. Cr. 178, 90 P. 2d 669, and Stough v. State, 75 Okla. Cr. 62, 128 P. 2d 1028. In these cases the question of former jeopardy, and the Oklahoma statutes above quoted with reference thereto, were discussed

but no reference to the statute here involved, 21 O. S. 1941 § 25, was considered. Nor was any question here involved passed on in those cases.

The case of State v. Inman et al., 224 N. C. 531, 31 S. E. 2d 641, 645, is cited and relied upon by the state. By reason of the fact that this case arose during the present World War, we deem it advisable to consider the same.

The defendants, Inman and Stark, were enlisted men serving in the 87th Infantry Division and 517th Parachute Infantry, and were stationed at Camp Mackall in Richmond county, N. C. While on furlough they entered Lee county, N. C., 50 miles from Camp Mackall, and were charged with the commission of the crimes of rape and robbery of the person in Lee county. A preliminary hearing was had, and at that time demand was made by the military authorities for the surrender of the parties for trial by court-martial under the Articles of War. This request was denied, and each defendant was indicted by the grand jury of Lee county. Requests were made by the proper military authorities for possession of the defendants both at the time of the arraignment of defendants, and at the time of trial. These requests, or motions, were overruled, the trial court stating in his order that when said motions were set for hearing no one appeared. From the order overruling the motions an appeal was taken, and later an application for a writ of prohibition was filed, seeking to prohibit the trial of said defendants because of the lack of jurisdiction of the superior court of Lee county. The court considered both the appeal, and the application for a writ of prohibition together.

It will be noted that the question of former jeopardy is not involved in that case. There had been no trial of the

defendants, either in the civil courts or by the military authorities. The court in the opinion comes to the conclusion that the military court did not request that the defendants be turned to them for military trial, but relied on the principle of the mere "right to exclusive military control of the prisoners as members of the Army." The court then quotes 10 U. S. C. A. § 1546, Articles of War, art. 74, which is set out later in this opinion.

The North Carolina court refers to the case of Caldwell v. Parker, 252 U. S. 376, 40 S. Ct. 388, 64 L. Ed. 621 (to which further reference will be hereafter made) and reaches the conclusion that Arts. 92, 93 of the Articles of War (10 U. S. C. A. §§ 1564 and 1565) did not confer upon military courts "exclusive jurisdiction to try members of the U. S. Army for such offenses committed within the state and beyond the exclusive territory under the immediate control of the military authorities, even in time of war, but that the state courts and the military courts had a concurrent jurisdiction of such offenses." The court does not attempt to decide the question as to the right of the military authorities to demand the possession of the defendants, and calls attention to the fact that the military authorities after making demand for the release of the defendants took no further action and did not join in the appeal or application for the writ of prohibition. The court entered an order dismissing the appeal and denied the application for a writ of prohibition on the ground that petitioners had the right of appeal after their trial, if convicted.

In the case of People v. Wendel, 59 Misc. 354, 112 N. Y. S. 301, cited and relied upon by the state, the defendant was a commissioned officer in the National Guard of the State of New York. He was indicted for grand larceny for certain alleged acts in connection with his of-

ficial conduct as a member of the National Guard. He was subsequently tried by a court-martial on charges designated as "conduct unbecoming an officer and a gentleman;" "conduct to the prejudice of good order and military discipline;" and "making a false certificate of account." He was found guilty and sentenced "to be dismissed from the service." The sentence was approved by the Governor. It may be stated that the offense with which he was charged by the military authorities was not identical with the charge in the civil court, although arising out of the same transaction. The distinction applied in the case of In re Stubbs, supra, could be said to be applicable here. It may also be stated that the offense occurred during times of peace, and not of war. The defendant was a civilian soldier, and not actually on duty as a member of the United States armed forces in time of war. Under this state of facts, the court held that his prosecution under the court-martial was not a bar to the prosecution in the civil court of the offense of grand larceny. It may again be stated that no statute such as we have in this state was there involved. The word "government" does not appear therein. The court refers to the case of Grafton v. United States (to which reference will be hereinafter made), and distinguishes the facts in that case from those in the case under consideration.

The case of People v. Spitzer, 148 Misc. 97, 266 N. Y. S. 522, is cited. In that case defendants had been indicted for making false canvass and a false statement of canvass in the performance of their duties as election inspectors. The defendants were indicted in the Federal court and were tried and convicted. They plead this conviction as a bar to their trial in the state courts. The court said that the only question involved was whether the offense charged in the Federal court and in the state

court was the same. It was the contention of the state that the same acts constituted a crime against the laws of the United States, and also against the laws of the state, and that in such cases both governments may prosecute the offense. This practice was recognized as the rule in the Federal courts, following the decision in the case of United States v. Lanza, 260 U. S. 377, 43 S. Ct. 141, 67 L. Ed. 314; but the Supreme Court of New York County said [148 Misc. 97, 266 N. Y. S. 526]:

"Such is not the law of New York." Citing the Constitution and statute of New York with reference to twice being put in jeopardy, and citing a special New York statute that provides: "when an offense is committed under such circumstances that the courts of this state and of another state or country have jurisdiction and a defendant has been convicted or acquitted in the other state or country, in a criminal prosecution, on the merits, the acquittal or conviction there is a sufficient defense here."

It will be noted that this statute is somewhat similar to the Oklahoma statute above quoted, but does not use the word "government," as used in the Oklahoma statute. The court in the concluding paragraph of the opinion uses this language:

"The right of a defendant to be tried only once for the same offense has long been recognized and cautiously guarded by the common law among all English-speaking nations, and has been restated and preserved to us by our Constitution, as well as by various statutes; and the rule that safeguards this ancient and important right should not be so attenuated and hedged about by technicality and refinement as to render its application difficult, or its security uncertain. The defendants participated in but a single transaction, and the acts for which they are indicted here are precisely and exclusively the facts upon which they were convicted and sentenced in the federal court. It is the spirit and purpose of the laws of New

York that for the same acts and upon the same evidence a defendant shall not be twice put in jeopardy. The former conviction in the federal court is a bar to a further prosecution of the indictment here."

The facts in the case of Caldwell v. Parker, supra, decided by the United States Supreme Court, were that the defendant was a soldier in the army of the United States during World War One, serving at a camp in the State of Alabama. He was tried in the civil court and convicted of the murder of a civilian at a place within the jurisdiction of the state, and not within the confines of any court or place subject to the control of the military authorities of the United States. The conviction was reviewed and affirmed by the Supreme Court of Alabama, and was re-examined and re-affirmed on rehearing. A petition for writ of habeas corpus was filed and refused, and an appeal taken to the Supreme Court of the United States. The discharge of defendant was asked on the ground that the sentence imposed on defendant was void "because the state court had no jurisdiction whatever over the subject of the commission of the crime, since, under the Constitution and laws of the United States that power was exclusively vested in a court-martial."

This contention was supported by argument and brief, and by an amicus curiae brief of the United States. It was contended that by reason of a change in the Articles of War by the Congress in 1916, from those previously enacted, there was vested in the military courts during a state of war exclusive jurisdiction to try and punish persons in the military service for offenses committed by them which were violative of the law of the several states.

The court first quotes and reviews the different Articles of War applicable to the trial of court-martial cases. The Articles were first adopted in 1775. They

were re-enacted in 1806, and were force in 1863, 12 Stat. 736, chap. 75, and provide:

"That in time of war, insurrection, or rebellion, murder, assault and battery with an intent to kill, manslaughter, mayhem, wounding by shooting or stabbing with an intent to commit murder, robbery, arson, burglary, rape, assault and battery with intent to commit rape, and larceny, shall be punishable by the sentence of a general court-martial or military commission, when committed by persons who are in the military service of the United States, and subject to the articles of war; and the punishments for such offences shall never be less than those inflicted by the laws of the state, territory, or district in which they may have been committed."

They were revised and re-enacted in 1874 (Rev. Stat. § 1342); and were re-enacted in the Revision of 1916, as follows:

"Article 92. Murder; Rape. Any person subject to military law who commits murder or rape shall suffer death or imprisonment for life, as a court-martial may (be) direct; but no person shall be tried by court-martial for murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in time of peace.

"Article 93. Various crimes. Any person subject to military law who commits manslaughter, mayhem, arson, burglary, robbery, larceny, embezzlement, perjury, assault with intent to commit any felony, or assault with intent to do bodily harm, shall be punished as a court-martial may direct." (A later amendment to this section has added additional crimes. See Sec. 1565, Title 10, U. S. C. A.)

"Article 74. Delivery of offenders to civil authorities. When any person subject to military law, except one who is held by the military authorities to answer, or who is awaiting trial or result of trial, or who is undergoing sentence for a crime or offense punishable under these

articles, is accused of a crime or offense committed within the geographical limits of the states of the Union and the District of Columbia, and punishable by the laws of the land, the commanding officer is required, except in time of war, upon application duly made, to use his utmost endeavor to deliver over such accused person to the civil authorities, or to aid the officers of justice in apprehending and securing him, in order that he may be brought to trial. Any commanding officer who upon such application refuses or wilfully neglects, except in time of war, to deliver over such accused person to the civil authorities or to aid the officers of justice in apprehending and securing him shall be dismissed from the service or suffer such other punishment as a court-martial may direct." 10 U. S. C. A. § 1471 et seq.

The court then considers the phrase "in time of war," and says:

"As in 1866 it was settled in Ex parte Milligan, 4 Wall. 2 [71 U. S. 2], 18 L. Ed. 281, that a state of war, in the absence of some occasion for the declaration of martial law or conditions consequent on military operations, gave no power to the military authorities where the civil courts were open and capable of performing their duties, to disregard their authority or frustrate the exercise by them of their normal and legitimate jurisdiction, it is indeed open to grave doubt whether it was the purpose of Congress, by the words 'except in time of war,' or the cognate words which were used with reference to the jurisdiction conferred in capital cases, to do more than to recognize the right of the military authorities, in time of war, within the areas affected by military operations or where martial law was controlling, or where civil authority was either totally suspended or obstructed, to deal with the crimes specified—a doubt which, if resolved against the assumption of general military power, would demonstrate, not only the jurisdiction of the state courts in this case, but the entire absence of jurisdiction in the military tribunals. And this doubt becomes additionally serious when the revision of 1874 is considered, since in that re-

vision the act of 1863 was in terms re-enacted and the words 'except in time of war,' appearing for the first time in article 59 of that revision, could have been alone intended to qualify the time of war with which the act dealt; that is, a condition resulting from a state of war which prevented or interfered with the discharge of their duties by the civil courts.

"Into the investigation of the subject of whether it was intended by the provision 'except in time of war,' contained in the Articles of 1916, to do more than meet the conditions exacted by the actual exigencies of war like those contemplated by the act of 1863, and which were within the purview of military authority, as pointed out in Ex parte Milligan, we do not feel called upon to enter. We say this because even though it be conceded that the purpose of Congress by the Articles of 1916, departing from everything which had gone before, was to give to military courts, as the mere result of a state of war, the power to punish as military offenses the crimes specified when committed by those in the military service, such admission is here negligible because, in that view, the regulations relied upon would do no more than extend the military authority, because of a state of war, to the punishment, as military crimes, of acts criminal under the state law, without the slightest indication of purpose to exclude the jurisdiction of state courts to deal with such acts as offenses against the state law."

The court affirmed the judgment of the Supreme Court of Alabama in refusing to grant the writ of habeas corpus, holding that the military authorities did not have exclusive jurisdiction in criminal cases of offenses committed by United States soldiers in violation of civil laws.

In McKittrick v. Brown, 337 Mo. 281, 85 S. W. 2d 385, 391, the Supreme Court of Missouri, in reviewing the Grafton Case, states that while it is not precisely in point on the question involved in the Missouri case, "it goes to

show that a court-martial, having jurisdiction, may bar a further prosecution in the civil courts even though on a more aggravated charge growing out of the same act."

The Missouri Supreme Court draws the distinction that a state does not derive its powers from the United States, while the Government of the Philippine Islands owes its existence wholly to the United States. Its judicial tribunals exert all their powers by authority of the United States. The jurisdiction and authority of the United States over that territory and its inhabitants for all legitimate purposes of government is paramount. The two tribunals that tried the accused Grafton exerted all their powers under and by authority of the same government— that of the United States. The exact language and holding of the United States Supreme Court in the Grafton case is as follows [206 U. S. 333, 27 S. Ct. 755]:

"But these things cannot be predicated of the relations between the United States and the Philippines. The government of a state does not derive its powers from the United States, while the government of the Philippines owes its existence wholly to the United States, and its judicial tribunals exert all their powers by authority of the United States. The jurisdiction and authority of the United States over that territory and its inhabitants, for all legitimate purposes of government, is paramount. So that the cases holding that the same acts committed in a state of the Union may constitute an offense against the United States and also a distinct offense against the state do not apply here, where the two tribunals that tried the accused exert all their powers under and by authority of the same government,—that of the United States.

"It may be difficult at times to determine whether the offense for which an officer or soldier is being tried is, in every substantial respect, the same offense for which he had been previously tried. We will not therefore attempt to formulate any rule by which every conceivable

case must be solved. But, passing by all other questions discussed by counsel, or which might arise on the record, and restricting our decision to the above question of double jeopardy, we adjudge that, consistently with the above act of 1902, and for the reasons stated, the plaintiff in error, a soldier in the Army, having been acquitted of the crime of homicide, alleged to have been committed by him in the Philippines, by a military court of competent jurisdiction, proceeding under the authority of the United States, could not be subsequently tried for the same offense in a civil court exercising authority in that territory. This is sufficient to dispose of the present case."

We can readily see the distinction made by the Supreme Court of Missouri in the decision in the Grafton Case and the one under consideration by the Supreme Court of that state and which would have application to the facts in the instant case; but as above stated, some of the reasoning and statements made in the Grafton case are highly important when applied to the facts in the instant case.

The case of Caldwell v. Parker, supra, is later than the Grafton Case. It does not attempt to overrule that case, but simply cites it. While these cases are not decisive of the question here involved, the Grafton case is more nearly in point.

In the case of Grafton v. United States, supra, the Supreme Court of the United States reversed a decision of the Supreme Court of the Philippine Islands affirming a judgment of the court of first instance in which one Grafton was adjudged guilty of homicide and sentenced, and the complaint or information was ordered dismissed, and the defendant discharged from custody, for the reason that he could not be twice put in jeopardy for the same offense. The facts in that case were:

The defendant, Grafton, a private in the United States army, was located in the Philippine Islands in 1904. He was tried by a general court-martial for the killing of a Filipino, the charge being for a violation of the 62d Article of War. The court found him not guilty as to each specification, and not guilty of the charge. This acquittal was affirmed by the Department Commander on August 25. 1904, and he was released from confinement and restored to duty.

Thereafter, and on November 28, 1904, the prosecuting attorney for the province in which the killing occurred filed a criminal information or complaint against the defendant, charging him with the crime of assassination, contrary to the laws of the province of the Philippines. We quote from the opinion of the United States Supreme Court:

"At the trial in the court of first instance the accused interposed a demurrer, alleging that that court had no jurisdiction to try him for the offense charged, for the following reasons: The acts constituting the alleged offense were committed within the limits of a military reservation of the United States and by a soldier duly enlisted in the Army of the United States, in the line of duty; the court of first instance of the Philippine Islands had no jurisdiction of the persons of officers or enlisted men of the United States Army for offenses committed by them in the performance of military duty; such courts were not constitutional courts, as contemplated by the 3rd article of the Constitution of the United States, and were without jurisdiction to try causes of which such constitutional courts have exclusive jurisdiction; the courts of the Philippine Islands could not deprive the accused of his constitutional privilege of trial by jury; and no court other than a military tribunal, constituted by the authority of the United States, could try the accused upon an indictment which had not been found or presented by a grand jury.

"The demurrer also stated that if the court held that it had jurisdiction to try the accused, then he pleaded, in bar of the proceedings against him, the judgment of the general court-martial, acquitting him of the offense of which he was found guilty in the court of first instance.

"The demurrer and plea were both overruled, the trial court holding that it had jurisdiction to try the accused, and that the plea of jeopardy based on his trial by court-martial was insufficient, in that the military court could not legally have taken cognizance of the crime of assassination charged in the information, but only of a violation of the 62d Article of War (1 Fed. Stat. Annot. 495).

"A trial was then had in the court of first instance before the judge thereof, without a jury, and resulted in a judgment declaring Grafton guilty of 'an infraction of article 404 of said Penal Code, and of the crime of homicide, in killing the said Felix Villanueva, at the time and place and in the manner hereinbefore stated, and, in view of the extenuating circumstances before remarked upon, he is sentenced by the court to imprisonment in such prison as the law directs, for the term of twelve years and one day, it being the minimum term of the minimum degree of reclusion temporal which is the penalty for homicide, and to pay the costs of the prosecution, and to suffer all the other accessories of said sentence.' The case was carried to the supreme court of the Philippines, where the judgment was affirmed by a divided court. The plea of double jeopardy was overruled by that court, and three of the seven judges were of opinion that, under the facts proved at the trial, the accused should have been acquitted."

In the Grafton Case, the Supreme Court of the United States made many statements with reference to the trials by general courts-martial and by civil courts which have application to the case here under consideration. They are statements in which the court was not considering the relation of the two governments, but the general funda-

mental laws as to trials by courts-martial and the civil courts. In the opinion it is said:

"We assume as indisputable, on principle and authority, that before a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged. It is alike indisputable that if a court-martial has jurisdiction to try an officer or soldier for a crime, its judgment will be accorded the finality and conclusiveness as to the issues involved which attend the judgments of a civil court in a case of which it may legally take cognizance. In Ex parte Reed, 100 U. S. 13, 23, 25 L. Ed. 538, 539, the court, referring to a court-martial, said: 'The court had jurisdiction over the person and the case. It is the organism provided by law and clothed with the duty of administering justice in this class of cases. Having had such jurisdiction, its proceedings cannot be collaterally impeached for any mere error or irregularity, if there were such, committed within the sphere of its authority. Its judgments, when approved as required, rest on the same basis, and are surrounded by the same considerations, which give conclusiveness to the judgments of other legal tribunals, including as well the lowest as the highest, under like circumstances. The exercise of discretion, within authorized limits, cannot be assigned for error and made the subject of review by an appellate court.' "

In the instant case it is undeniable that the military authorities had jurisdiction to try the defendant by court-martial, and that he was charged under the Articles of War with the identical offense of which he was charged in the state court. The question of being charged with two separate offenses does not appear in this case. The court, quoting from the case of Carter v. Roberts, 177 U. S. 496, 20 S. Ct. 713, 44 L. Ed. 861, says:

" 'Courts-martial are lawful tribunals, with authority to finally determine any case over which they have juris-

diction, and their proceedings, when confirmed as provided, are not open to review by the civil tribunals, except for the purpose of ascertaining whether the military court had jurisdiction of the person and subject matter, and whether, though having such jurisdiction, it had exceeded its powers in the sentence pronounced.' This language was repeated in Carter v. McClaughry, 183 U. S. 365, 380, 22 S. Ct. 181, 46 L. Ed. 236, 242.

"It thus appears to be settled that the civil tribunals cannot disregard the judgments of a general court-martial against an accused officer or soldier, if such court had jurisdiction to try the offense set forth in the charge and specifications; this, notwithstanding the civil court, if it had first taken hold of the case, might have tried the accused for the same offense or even one of higher grade arising out of the same facts."

The court then considers the proposition as to whether the court-martial had jurisdiction of the offense charged against the defendant, and comes to the conclusion that under the Articles of War, art. 62 (1 Fed. Stat. Ann. 495), "it is entirely clear that the court-martial had jurisdiction to try the accused upon the charges preferred against him."

The court says further:

"While, however, the jurisdiction of general courts-martial extends to all crimes, not capital, committed against public law by an officer or soldier of the Army within the limits of the territory in which he is serving, this jurisdiction is not exclusive, but only concurrent with that of the civil courts. Of such offenses courts-martial may take cognizance under the 62d Article of War (1 Fed. Stat. Ann. 495), and, if they first acquire jurisdiction, their judgments cannot be disregarded by the civil courts for mere error or for any reason not affecting the jurisdiction of the military court."

The court further says:

"But we rest our decision of this question upon the broad ground that the same acts constituting a crime against the United States cannot, after the acquittal or conviction of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or in another court, civil or military, of the same government. Congress has chosen, in its discretion, to confer upon general courts-martial authority to try an officer or soldier for any crime, not capital, committed by him in the territory in which he is serving. When that was done the judgment of such military court was placed upon the same level as the judgments of other tribunals when the inquiry arises whether an accused was, in virtue of that judgment, put in jeopardy of life or limb. Any possible conflict in these matters, between civil and military courts, can be obviated either by withholding from courts-martial all authority to try officers or soldiers for crimes prescribed by the civil power, leaving the civil tribunals to try such offenses, or by investing courts-martial with exclusive jurisdiction to try such officers and soldiers for all crimes not capital."

The same may be said of the Oklahoma statute above quoted, 21 O. S. 1941 § 25. If the Legislature desires to amend this statute it has the power and right to do so. Its proper construction as it now exists is the only duty of the courts.

We have briefly reviewed the facts in a number of cases and given the conclusions reached by the courts in those cases. We now desire to consider the terms of the statute, 21 O. S. 1941 § 25, hereinbefore quoted, which is different from those of any other states with the exception of The Dakotas, California and Arizona, and those states have never construed the same.

It is strongly contended that by the insertion of the word "government" in our statute, it was intended by the Legislature to specifically cover trials by courts-martial.

After careful consideration, we have come to the conclusion that at the time of the adoption of the statute in question, the Legislature knew of the decision in Grafton v. United States, supra, wherein it was held that an individual tried by a general court-martial was being tried by a court created by the Federal Government, and being cognizant of this interpretation, they inserted the word "government" in the statute to specifically cover cases that might arise where the accused had been tried by a general court-martial.

This court, in the case of La Forge v. State, supra, evidently took this view. The defendant in that case was tried and convicted of the crime of unlawful possession of intoxicating liquor in Payne county. He pleaded former jeopardy by reason of previous conviction in the Federal District Court for the Western District of Oklahoma, for the possession of the identical liquor. Judge Bessey, in rendering the opinion of the court, recognized the general rule as to double punishment in the state and Federal courts, as follows [28 Okla. Cr. 37, 228 P. 1112]:

"By the great weight of authority in both the federal and state courts it has been held that punishment for possession or transportation of intoxicating liquors under the federal law does not prevent punishment under a state law for the same character of offense growing out of the same identical act; and that such conviction for a violation of a state law is not necessarily in conflict with the state or federal constitutional provisions against double jeopardy. The underlying reasons for such holding are well and fully discussed in the following cases: United States v. Lanza, 260 U. S. 377, 43 S. Ct. 141, 67 L. Ed. 314; State v. Rhodes, 146 Tenn. 398, 242 S. W. 642, 22 A. L. R. 1544. with annotations at page 1551; Annotations, 16 A. L. R. 1237.

"However, in this state this question of double pun-

ishment is governed by statute. Section 2290, Comp. Stat. 1921 (21 O. S. 1941 § 25) provides as follows:

" 'Whenever it appears upon the trial that the accused has already been acquitted or convicted upon any criminal prosecution under the laws of another state, government or country, founded upon the act or omission in respect to which he is upon trial, this is a sufficient defense.'

"In the case of United States v. Lanza, supra, at the conclusion of the opinion written by Chief Justice Taft, it is said:

" 'If Congress sees fit to bar prosecution by the federal courts for any act when punishment for violation of state prohibition has been imposed, it can, of course, do so by proper legislative provision; but it has not done so. If a state were to punish the manufacture, transportation, and sale of intoxicating liquor by small or nominal fines, the race of offenders to the courts of that state to plead guilty and secure immunity from Federal prosecution for such acts would not make for respect for the federal statute, or for its deterrent effect. But it is not for us to discuss the wisdom of legislation; it is enough for us to hold that, in the absence of special provision by Congress, conviction and punishment in a state court, under a state law, for making, transporting, and selling intoxicating liquors, is not a bar to a prosecution in a court of the United States, under the federal law, for the same acts.'

"The principle announced by Chief Justice Taft concerning federal statutory modifications relating to double punishment will apply with equal force to state statutes. Our statute above quoted (Section 2290, C. S. 1921, 21 O. S. 1941 § 25) is susceptible of but one construction. And a conviction in a federal court for the same act as charged in a prosecution in a state court is a conviction under the laws of a different 'government' within the meaning of the statute; and by virtue of the statute alone such conviction is a complete defense to a prosecution for the same act or omission in the courts of this state. If the Legislature desires to abrogate this rule and fall in line with other states pursuing a contrary policy, such

change must be made by the Legislature. This court would have no right by judicial construction to abrogate a plain provision of the statute in order to harmonize our practice with that of other states, or for any other reason."

It will thus be noted that this court has taken cognizance of the use of the word "government" in this statute, and that by reason of the use of the same an exception was made to the general rule announced by other states which had no such statute.

The argument that a trial by a general court-martial is not a criminal proceeding within the meaning of our Constitution and statutory provisions and cannot, therefore, be the basis of a plea of former jeopardy, cannot be upheld where consideration is given to the statute above quoted. The cases cited by the state do not sustain this contention.

It is true that a general court-martial acts under appointment and supervision of the executive, and not the judicial department of government; but the authorities do not sustain the proposition that judgments and sentences may not be used as a bar in pleading the double jeopardy constitutional and statutory provisions. 15 Am. Jur. p. 72, § 399; 11 Amer. & Eng. Ann. Cas. p. 640; People v. Spitzer, supra; Grafton v. United States, supra; Coleman v. State of Tennessee, 97 U. S. 509, 24 L. Ed. 1118.

These authorities base their decisions upon the fact that two crimes are committed, one against the state, and the other against the military, and that the prosecution by the state is not a bar, though they arise out of identical acts, and that both the state and the military authorities have concurrent jurisdiction.

It is also true that in accordance with the 74th provision of the Articles of War, as above quoted, the com-

manding officer as a general rule is required and will, except in time of war, upon application, deliver over the accused to the civil authorities in order that he may be brought to trial in the civil courts. This does not defeat the jurisdiction of the military tribunals to institute and carry on court-martial proceedings; and, when they are had to a final conclusion, prohibit them from being pleaded as a bar to a prosecution under the double jeopardy statute above quoted, and in force in this state.

21 O. S. 1941 § 25 is independent of the statutes which require a prosecution in this state to be by indictment or information and that a preliminary examination must be had upon a duly verified complaint, and that a defendant shall have a trial by jury, unless waived, and a list of the witnesses served upon him before trial in a capital case, and other rights permitted under the general statutes. This court has no right to dictate the terms of the statutory procedure of other "governments" in the trial of cases by them, and where the acts charged are identical, the prosecution by court-martial under our statute is a prosecution by another "government," and may be pleaded in bar to a prosecution in this state.

If the state had first assumed jurisdiction of the instant case, and the defendant had been convicted before being tried by a general court-martial, a different question might be presented.

We recognize the importance of the question here presented, and the argument made for a holding that the civil courts should be given the right to try members of the United States army who commit crimes by reason of a state statute, and in a place and at a time when they are performing no act within their military duties or on property exclusively used for military purposes. This

argument appeals to us, and if it were not for the enactment of the Legislature of this state above quoted, we would be inclined to so hold, but under that statute it seems clear that it was the legislative intent that where one is charged and tried for the identical offense, as are the facts here presented, by a court-martial, that this is an acquittal and bar to another prosecution in the state courts. It cannot be presumed that the military authorities will act in bad faith, and that a prosecution therein will be had for the purpose of shielding one guilty of a criminal offense.

Many of the decisions hereinbefore reviewed distinguish cases involving a violation of both the state law and the Articles of War, and for this reason hold that a violation may be had of both. Other cases hold that there is a concurrent jurisdiction by the state and military authorities, and that the one first acquiring jurisdiction and taking action thereon has the right to do so to the exclusion of the other. The facts presented in the instant case reveal that the military authorities were first given possession of the defendant, and that he was tried by a court-martial having jurisdiction, and found not guilty of the same offense with which he was charged in the state court. At no time did the state demand his custody. and his arraignment in the district court of Oklahoma county was after he had been tried and acquitted by the general court-martial.

At the time this case was presented, it was revealed that after the trial by court-martial and defendant had been found not guilty, the proceedings were reviewed by the Commanding General at Will Rogers Army Air Field and approved, and that the record had been forwarded to Washington and there reviewed and approved by the proper officials. The action had become final as far as the court-martial proceedings were concerned.

We have reached the conclusion that by reason of the terms of the statute above quoted, and the decision in the case of LaForge v. State, supra, construing the same, as applied to the facts in this case, the trial and acquittal of the defendant by the general court-martial at Will Rogers Army Air Field is a bar to his prosecution in the state court for the offense of manslaughter, with which he stood charged before the court-martial.

For the reasons above stated, the petition for writ of prohibition against the respondent is denied.

JONES, J., concurs.  DOYLE, J., concurs in conclusion.

On Rehearing.

BAREFOOT, J.  The petition for writ of prohibition filed by the state in this case was denied by this court in an opinion rendered November 14, 1945, 82 Okla. Cr. 155, 163 P. 2d 558.

A motion for rehearing has been filed by the Attorney General, and our attention called to the fact that while the petition was under consideration, and on October 30, 1945, the Attorney General filed a reply brief with the clerk of the Criminal Court of Appeals.  This brief was not delivered to the court prior to the consideration of the case.  We have now examined that brief, and the petition for rehearing with brief attached, and the reply brief filed by the respondent.

It is strongly contended that the court erred in the opinion heretofore rendered.  We have again carefully considered the facts in this case.

The cases cited by the state which it is claimed sustain its contention are: Moore v. People of Illinois, 14 How. 13, 55 U. S. 13, 14 L. Ed. 306; Fox v. State, 5 How.

410, 432, 12 L. Ed. 213; United States v. Marigold, 9 How. 560, 13 L. Ed. 257; People v. Eklof, 179 Misc. 536, 41 N. Y. S. 2d 557; Hebert v. State of Louisiana, 272 U. S. 312, 47 S. Ct. 103, 71 L. Ed. 270, 48 A. L. R. 1102; Jerome v. United States, 318 U. S. 101, 63 S. Ct. 483, 87 L. Ed. 640; State v. Rankin, 44 Tenn. 145, 146; Ex parte Tobias Watkins, 3 Pet. 193, 28 U. S. 193, 7 L. Ed. 650; Wise v. Withers, 3 Cranch 331, 2 L. Ed. 457; Ver Mehren v. Sirmyer, Commandant, etc., 8 Cir., 36 F. 2d 876; Mc-Claughry v. Deming, 186 U. S. 49, 22 S. Ct. 786, 46 L. Ed. 1049; and In re Bogart, U. S., 3 Fed. Cas. page 796, No. 1,596.

We have carefully read each of these cases. It would unduly lengthen this opinion on rehearing to refer to each of them. In many of the cases the question of trial by court-martial was not involved, and only slight reference is made to the question here under consideration. Many of the cases cited arose during the time of the Civil War. The statutes and the Articles of War have been amended and changed since they were first written, and the facts involved in a majority of the cases are different from the facts in the case at bar. Many of the cases are based upon the fact that two crimes were committed by the same act, one against the United States, and one against the state, as stated in the original opinion in this case, and for this reason a prosecution by both the civil and military authorities was permissible. In a number of the cases cited, it was held that a concurrent jurisdiction existed between the civil and military authorities, and that the one first assuming jurisdiction would be respected by the other.

Many of the cases are based upon the decision of the case of United States v. Lanza, 260 U. S. 377, 43 S. Ct. 141, 67 L. Ed. 314, to which reference is made in the case

of LaForge v. State, 28 Okla. Cr. 37, 228 P. 1111, decided by this court, and in which it is held that by reason of 21 O. S. 1941 § 25 the rule announced in the Lanza case does not apply in this state. This distinction is recognized in the note to 48 A. L. R. page 1108, where the LaForge Case is cited and quoted.

In the case of Griffin v. State, 57 Okla. Cr. 176, 46 P. 2d 382, 386, this court, after quoting the above statute, says:

"Our statute above quoted (21 O. S. 1941 § 25) is susceptible of but one construction. And a conviction in a federal court for the same act as charged in a prosecution in a state court is a conviction under the laws of another. 'government' within the meaning of the statute; and by virtue of the statute alone such conviction is a complete defense to a prosecution for the same act or omission in the courts of this state."

It will also be noted that none of the states from which the cases cited by the state are taken have a statute like that in force in Oklahoma.

Counsel for the state has referred in his brief to the case of People v. Spitzer, 148 Misc. 97, 98, 266 N. Y. S. 522, 528, to which reference is made in the original opinion. Attention is called to the terms of the New York statute, and the statute is set out in the state's brief. We have examined the same, and under its terms the decision in that case is squarely against the contention made by the state in the instant case. It is in harmony with the ruling in the Oklahoma case of LaForge v. State, supra, cited in the original opinion. The court, in that opinion, says:

"The right of a defendant to be tried only once for the same offense has long been recognized and cautiously guarded by the common law among all English-speaking nations, and has been restated and preserved to us by our

Constitution, as well as by various statutes; and the rule that safeguards this ancient and important right should not be so attenuated and hedged about by technicality and refinement as to render its application difficult, or its security uncertain. The defendants participated in but a single transaction, and the acts for which they are indicted here are precisely and exclusively the facts upon which they were convicted and sentenced in the federal court. It is the spirit and purpose of the laws of New York that for the same acts and upon the same evidence a defendant shall not be twice put in jeopardy. The former conviction in the federal court is a bar to a further prosecution of the indictment here."

The state also cites the case of People v. Eklof, 179 Misc. 536, 41 N. Y. S. 2d 557, 558, and quotes the first, second and third paragraphs of the syllabus. The reading of the case reveals that it is squarely against the contention of the state. It is in harmony with the decision of the New York courts in holding that where the offenses are "identical in law and in fact," a conviction in the federal court is a bar to a prosecution in the state court. A distinction is made between the decisions in the state and federal courts. In the body of the opinion it is said:

"It is also provided in section 139 of the Code of Criminal Procedure: 'When an act charged as a crime is within the jurisdiction of another state, territory or country, as well as within the jurisdiction of this state, a conviction or acquittal thereof in the former, is a bar to a prosecution or indictment therefor in this state.'

"Section 33 of the Penal Law provides that when an offense is committed in a foreign jurisdiction under circumstances under which the courts of this State have jurisdiction, and the defendant has already been acquitted or convicted on the merits upon a criminal prosecution under the laws of such State or country, such former acquittal or conviction is a sufficient defense.

"The motion to dismiss the indictment on the ground of double jeopardy is therefore granted."

An examination of section 33 of the Penal Laws reveals that the word "government" appears therein, but it does not in any way change the meaning of the statute, as above stated.

The strongest case presented by the state in its brief on motion for rehearing in support of its contention, is that of State v. Rankin, 44 Tenn. 145, 146. We had read and considered this case prior to writing the original opinion. In that case the defendant stood charged in the Circuit Court of Jefferson county, Tennessee, with murder, committed on June 1, 1865. He was a lieutenant in Company B, Ninth Tennessee Cavalry, and as such in the military service of the United States, and subject to the jurisdiction of the military courts and general courts-martial established by the laws of the United States. He was charged in the military court with the crime of murder, being the same charge filed against him in the Circuit Court of Tennessee, and tried by a general court-martial, and found "not guilty." He pleaded this action as a bar to his prosecution in the Circuit Court of Jefferson county. The Circuit Court sustained his plea of former jeopardy, and the state appealed to the Supreme Court of Tennessee. The Supreme Court reversed the judgment of the Circuit Court, holding that the defendant could be tried under the laws of the state, notwithstanding the trial and acquittal by the general court-martial.

Granting that this decision is in accord with the contention of the state here, we call attention to the fact that Tennessee had no such statute as Oklahoma, 21 O. S. 1941 § 25, upon which the decision in this case was based.

The Tennessee case is predicated upon the early decisions of the United States Supreme Court heretofore cited. As pointed out, these cases were not court-martial cases, and in most instances were based upon the distinction that the defendant was charged with two distinct crimes, one against the state or civil authorities, and one against the military authorities.

The court cites and discusses the case of Capt. Howe ("Military Law & Courts-Marital," by Bennett, pp. 100-102). In that case Capt. Howe was charged in the court-martial proceedings with "conduct prejudicial to good order and military discipline" in committing certain acts, which caused the death of another. An attempt was made to prosecute him in the civil courts of Florida upon the charge of murder, and the military court sustained the plea that the defendant could not be prosecuted in the court-martial proceedings, as the State of Florida had sole jurisdiction. The commanding general disapproved this decision, but suspended all proceedings pending a decision in the civil court. Upon the defendant being found not guilty in the civil court, the military tribunal was re-assembled on May 10, 1942, seven months later, and the defendant pleaded his former acquittal in the state court as a bar to his prosecution in the military court. The plea was denied and the defendant was convicted by the general court-martial, "and sentenced to be suspended from rank, pay and emoluments, for twelve calendar months." This action was based upon the proposition that the defendant had violated both the laws of Tennessee and the military laws. In the comments of the Attorney General, it is said: "Assault and battery and homicide, are violations of the municipal laws of the place where committed to be tried and punished by the proper tribunal of the State or Territory where peace is broken and laws offended. But the

same act being done by an officer or soldier of the army of the United States, over and above the breach of the local law, is a breach also of the law of the United States, in violation of the rules and articles for the government of the armies of the United States."

It is thus seen that the same distinction is made of the two crimes, the one against the civil and the one against the military authorities, as stated in this and the original opinion. Nowhere is it intimated, as contended by the state, that the prosecution by a court-martial of the military authorities is not a criminal prosecution.

Finally, the State cites the case of McClaughry v. Deming, supra. This was a case where Peter C. Deming, a Captain in the "voluntary" army of the United States, was tried by a general court-martial at San Francisco. The court-martial was wholly composed of officers selected from the "regular army." He was tried, convicted, and sentenced to serve a term of three years in the Federal prison at Leavenworth, Kansas, and given other punishments. He filed a petition for writ of habeas corpus to be released on the grounds that he was convicted by a court-martial that did not have jurisdiction of the person or subject matter, by reason of the 77th Article of War, section 1342 of the Revised Statutes of the United States, which was as follows: "Officers of the Regular Army shall not be competent to sit on courts-marital to try the officers or soldiers of other forces, except as provided in Article 78."

Article 78 was held to have no application.

The Circuit Court of Appeals for the Eighth Circuit upheld this contention (113 F. 639), and this decision was affirmed by the Supreme Court. This case was cited

and quoted from to sustain the contention that a court-martial is a court of "special and limited jurisdiction;" that it is called for a special purpose, and to perform a particular duty. When the object of its creation has been accomplished, it is dissolved. The court so holds.

It is interesting to note that Justice Peckham, in the course of the opinion, discusses fully the question of "jurisdiction" of courts-martial. And while he comes to the conclusion that the court-martial in that case did not have jurisdiction of the person or the subject matter, by reason of the fact that the plain words of the statute prohibited the members of the "Regular Army" from sitting on a court-martial of members or officers of the "voluntary army," he clearly recognizes the legality and finality of the judgments of those courts where they have jurisdiction of the person and subject matter, as are the facts in the instant case. He says [186 U. S. 49, 22 S. Ct. 794] :

"In order to give effect to the judgment of a court of that nature it must appear affirmatively that the court was legally constituted; that it had jurisdiction, and that all the statutory requirements governing its proceedings had been complied with. * * *

"The question we are now discussing resolves itself into one of jurisdiction simply. If the court-martial had jurisdiction over the subject- matter of the charge against the defendant and of the person, or if the consent of the defendant gave such jurisdiction, the writ of habeas corpus will afford no relief, for, generally, in such case any error committed by a court-martial regularly organized and with full jurisdiction is not assailable before the civil courts. Swain v. United States, 165 U. S. 553, 17 S. Ct. 448, 41 L. Ed. 823; Carter v. McClaughry, 183 U. S. 365, 22 S. Ct. 181, 46 L. Ed. 236."

None of the requirements above mentioned were questioned in this case. The court-martial was legally con-

stituted, and all the requirements of the Federal statute had been complied with. A charge had been made against the defendant which the Federal statute authorized. There could be no doubt as to the question of the court-martial having jurisdiction. By this, as originally stated, we do not intend to say that the state would not have concurrent jurisdiction, and if they had exercised it as they had the right to do, a different question would be presented. But in permitting the military authorities to take charge of the defendant, and prefer against him identical charges which he stands charged in the state court, thus waiving their right, it would seem unreasonable to hold that he can now be proceeded against after a trial and acquittal by a "court-martial" that had jurisdiction of the person and subject matter. And this is certainly true when 21 O. S. 1941 § 25 is considered.

The case of In re Bogart, supra, is cited in the reply brief of the state. We do not know why it was cited. Only a short statement of Attorney General Cushing is quoted therefrom. We shall not unduly lengthen this opinion by reviewing the case in full. It is squarely against every contention of the state upon the question of the jurisdiction of court-martial, and squarely against the statement that a trial by court-martial is not a criminal prosecution, as contended by the State. It sets out and discusses the eighth section of the first Article of the Constitution of the United States, which provides for Congress to have the right "to make rules for the government of the land and naval forces," and considers this section in connection with other sections of the Constitution, and, quoting from the case of Dynes v. Hoover, 20 How. 65, 78, 61 U. S. 65, 15 L. Ed. 838 says:

" 'These provisions show that Congress has the power to provide for the trial and punishment of military and

naval offenses, in the manner then and now practiced by civilized nations; and that the power to do so is given without any connection between it and the third article of the constitution, defining the judicial power of the United States; indeed, that the two powers are entirely independent of each other.' 20 How. [78], 61 U. S. 78, 79 [15 L. Ed. 838].

"Again, in the same case, it is said: 'With the sentences of courts-martial, which have been regularly convened, and have proceeded legally, and by which punishments are directed, not forbidden by law, or which are according to the laws of the sea, civil courts have nothing to do. If it were otherwise, the civil courts would virtually administer the rules and articles of war irrespective of those to whom that duty and obligation has been confided by the laws of the United States, from whose decisions no appeal of any kind has been given to the civil magistrates or civil courts.' "

The court quotes with approval from Ex parte Milligan, 4 Wall. 2, 71 U. S. 2, 123, 18 L. Ed. 281, which is cited and quoted in the original opinion. Near the end of the opinion, it is said:

"The liability of the navy department, and of its courts-martial, to abuse their powers in cases like this, has been strenuously urged in various stages of the hearing against the views and construction of the constitution and statutes adopted by us. Similar arguments have often been urged before in courts of justice, in cases involving analogous questions. The answer often repeated in the books is well stated by Mr. Justice Story, in Ex parte Kearney, 7 Wheat. [38], 20 U. S. 45 [5 L. Ed. 391]. That eminent jurist says: 'Wherever power is lodged it may be abused. But this furnishes no solid objection against its exercise. Confidence must be reposed somewhere, and if there should be any abuse it will be a public grievance, for which a remedy may be applied by legislation, but it is not to be devised by courts of justice.'

"The same constitution and the same legislative power which conferred civil jurisdiction on the national judiciary, also conferred jurisdiction over military and naval offenses upon courts-martial, appointed and supervised by the war and navy departments. Each is supreme while acting within the sphere of its own exclusive jurisdiction. In the terse and appropriate language of Attorney-General Cushing: 'A court-martial is a lawful tribunal, existing by the same authority that any other exists by, and the law, military, is a branch of law as valid as any other, and it differs from the general law of the land in authority only in this, that it applies to officers and soldiers of the army, but not to other members of the body politics, and that it is limited to breaches of military duty'. 6 Op. Atty. Gen. 425.

"This court has no more right to assume or suppose that those who, by the constitution and laws, are made the depositaries of jurisdiction over military offenses, will abuse these powers, than that those who, by the same constitution and laws, are entrusted with the general civil jurisdiction of the land, will abuse the trust devolved upon them. It is, undoubtedly, the imperative duty, and we have no doubt that it will be the pleasure, of the judiciary to jealously and vigorously maintain its own jurisdiction in its utmost extent, for the protection of the citizen in all his rights of person and property; and to confine within their proper limits the special and limited jurisdiction of other tribunals. But, while this is so, it is no less its duty to abstain from trespassing upon, or usurping the rightful powers of any other tribunal, however limited may be the sphere of its jurisdiction. A breach of this latter duty would be no less reprehensible than a breach of the former."

This case in no uncertain terms holds that a court-martial is a "lawful tribunal," and is as "valid" as any other. That it has the same power and authority as civil tribunals, the only difference being that it exercises the right over officers and soldiers of the army, and not

civilians. That the same Constitution and legislative power created both the civil and military courts. Can it be successfully contended that a court-martial is not a criminal proceeding, under the above statements, when applied to cases coming within the jurisdiction of military tribunals? We think not. We have read no decisions to the contrary. The procedure of the state may not be followed as provided by the statute of the state, but the punishment to be inflicted under the Articles of War is the same as provided by the statutes of this state, 12 Stat. chap. 75, p. 731.

While it may not come within the purview of judicial knowledge to be considered by the court, we have personally known of courts-martial trials that lasted for weeks and months. Members of the military forces have been tried for major offenses. Able counsel have represented both the military authorities and the defendants. Large sums of money have been spent by the government and by the defendants in prosecuting and defending these cases. A verdict is returned either of guilty or not guilty. Can it be said that it would be just and right that a defendant who has thus confronted such a trial when found not guilty be immediately charged in a state court and again be forced to undergo the expense and hardship of a second trial in the state court for the same identical offense with which he has been acquitted? It just seems that such was not the intention of the makers of the law when they wrote that provision of the Constitution of this state which says, "nor shall any person be twice put in jeopardy of life or liberty for the same offense." Article 2, § 21.

We feel certain that 21 O. S. 1941 § 25 was adopted or enacted for the purpose of protecting this right; that the word "government" therein should and does include mili-

tary government, and that trial and acquittal of one by the military court constitutes a bar to his prosecution in the state court for the same offense.

For the reasons stated the petition for rehearing is denied.

JONES, P. J., and DOYLE, J., concur.