**UNITED STATES of America,**
**Plaintiff,**

v.

**Manuel Duran CANDELARIA,**
**Defendant.**

**Crim. A. No. 24036.**

United States District Court,
S. D. California, Central Division.

April 4, 1955.

Laughlin E. Waters, U. S. Atty., for the Southern Dist. of Cal., Los Angeles, Cal., by Louis Lee Abbott, and Cecil Hicks, Jr., Asst. U. S. Attys., Los Angeles, Cal., for plaintiff.

John J. Bradley (Court Appointed), Los Angeles, Cal., for defendant.

TOLIN, District Judge.

This case is now before the Court on the Court's own motion, it having learned of facts which indicate that modification of sentence should be considered.

Defendant pleaded Guilty in this Court to an indictment which charged robbery of a National bank with use of a deadly weapon. Although it is the custom of the Court to impose heavier sentences, Candelaria's case appeared to require but little more than is customarily served by prisoners convicted of crimes in the Courts of California.[1]

Defendant's past life, while certainly not exemplary,[2] does show a record of industry and ambition mixed with bad conduct indicative of immaturity, lack of education and supervision, yet with strong possibilities of rehabilitation. The defendant is in need of a moderate term of prison discipline and education with supervision after his release.

By a system of farms, factories and schools coupled with institutional discipline and finally parole, or conditional release, toward the end of the term, the Federal Prison System has done much to rehabilitate the young offenders[3] as well as to provide exceedingly long terms, sometimes permanent isolation from society, for those felons who have demonstrated either an inability or an apparently incurable aversion to the minimum rules of free life.

This defendant definitely appeared to the Court as one who most probably would respond to rehabilitation treatment in a Federal institution and, on February 7, 1955, was sentenced to custody for a term of five years. By application of the good behavior credits[4] which reasonably could be expected, the prisoner would serve 48 months in prison followed by 12 months supervision while on conditional release[5]. It is exceedingly

1. The Penal Code of California prescribes a term of from five years to life, Calif. Penal Code, § 213, and ordinarily by application of good conduct credits, California robbers serve between 36 and 48 months. "California Prisoners—1953", p. 26, published by The Bureau of Criminal Statistics, State of California. By application of good conduct credits (if earned) defendant would serve 48 months of the 5-year term imposed by this Court. See 18 U.S.C.A. § 4161.

2. Defendant was on State probation for a morals offense when he committed the crime which brought him before this Court.

3. This defendant is 28 years of age.

4. See 18 U.S.C.A. § 4161:
"Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, to be credited as earned and computed monthly as follows:

\* \* \* \* \*

"Eight days for each month, if the sentence is not less than five years and less than ten years. \* \* \* "

5. See 18 U.S.C.A. § 4164:
"A prisoner having served the term or terms for which he shall have been sentenced after June 29, 1932, less good time deductions, shall upon release be treated as if released on parole, and shall be subject to all provisions of law relat-

unlikely that he would be paroled at any time, but sometimes unforeseen circumstances arise indicating that parole is proper, and although it is rarely granted in cases of this character [6], the possibility that a man might earn, or at least not be conclusively barred from parole in the latter part of his term, has been found an incentive to improvement in prisoners, all of whom are needful of some such incentive.

After the prisoner had been transported to McNeil Island Penitentiary, the Court received a letter from him.[7] The prisoner is now subject to a detainer because local authorities have decided to prosecute him for the same crime.[8]

Because of the detainer, the prisoner must be denied the privilege of work in the portions of the prison which are not within the walls (farms, fishery, etc.) and cannot be granted parole at any time, nor may he be a trusty and have the privileges and responsibilities connected with such a position.

If his case for employment by Federal Prison Industries, Inc.[9] is borderline, he might not be hired by that "within the walls" employer. In short, the privileges which cooperative acceptance of prison life usually bring to a prisoner are to be denied him throughout his term because California wants to again imprison him upon release from the Federal prison

---

ing to the parole of United States prisoners until the expiration of the maximum term or terms for which he was sentenced.

"This section shall not prevent delivery of a prisoner to the authorities of any State otherwise entitled to his custody."

18 U.S.C.A. § 4203:

"Such parolee shall be allowed in the discretion of the Board, to return to his home, or to go elsewhere, upon such terms and conditions, including personal reports from such paroled person, as the Board shall prescribe, and to remain, while on parole, in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which he was sentenced. * * *".

6. By rarely granted, is meant "rarely granted in the Federal system." It is almost universally granted except for older second or plus termers in the California system. See Footnote No. 1.

7. In pertinent part the letter reads:
"3–10–55"
"From    M. Candelaria
            McNeil Island
"To       Judge Ernest A. Tolin
            Federal District Court
"Your Honor,
    " * * * until today I meant to write you a purely complimentary letter, expressing my grateful thanks, for your justice in sentencing me * * * also for your appointment of Mr. John J. Bradley, whose services were far beyond anything I expected. His conscientous counsel knowing all the while I could never pay him I felt warrented more than

just a mere 'Thank you.' With the above thoughts I felt a brief note would suffice.

"But today I was informed that a detainer by the State of California, * * * has been placed on me. This detainer is for the crime for which I am now * * * serving sentence. I didn't believe this was possible. * * *."

"Sincerely"
"Manuel D. Candelaria"

8.                 " * * * "
"United States Penitentiary"
"McNeil Island, Washington"
                " * * * "
                        " * * * "
" * * *

"The following information is furnished in response to your letter of March 8, 1955 regarding a detainer placed against the above named man by the Police Department, Los Angeles.

"We have received letter of February 28, 1955 from the Chief of Police, Los Angeles, enclosing certified copy of Felony Warrant 125560 charging Robbery, 1 Count. That letter states 'This warrant covers the robbery of the Citizens' National Bank, 2601 North Broadway for whiche he is now serving time'. As they have requested, the warrant is being held as a detainer against Candelaria.

"We have no further information concerning the status of the prosecution."
                " * * * "

9. Where small sums are earned averaging about $26. per month and applied partly toward the prisoner's family obligations and partly to build a small fund for his re-establishment in the community on release. See 18 U.S.C.A. § 4126.

for the very same offense for which he is now being punished.[10]

While it is manifestly proper that a robber serve a prison term, it is not in keeping with fair administration of justice that one defendant serve two terms for one offense.

Disturbed at the interruption of Federal rehabilitative procedure brought about by the Detainer, the Court directed a letter to the Chief of Police of Los Angeles [11] and another to the District Attorney of Los Angeles County.[12]

The Chief of Police has not replied. The District Attorney sent a Deputy who

10. Upon conviction of which he would *not* be eligible for probation but would have to start over again within a State prison. Calif. Penal Code, § 1203.

11. "United States District Court"
"Southern District of California"
"Los Angeles 12, California"
"Ernest A. Tolin"
"Judge"
"March 9, 1955"
"Honorable William H. Parker
Chief of Police of Los Angeles
City Hall
Los Angeles 12, California
"Re: Manuel Duran Candelaria
"Dear Chief Parker:
"It will be appreciated if you can either give the subject of this letter your personal attention or see that it gets high level consideration.
"On February 7th Manuel Duran Candelaria was sentenced in my Court on a one-count indictment to which he had pleaded Guilty. The charge was robbery of a National Bank with the use of a dangerous weapon. Enclosed is a copy of the Probation Officer's Report. After full consideration, I decided that this man is a probable subject of rehabilitation but, in view of the nature of the offense, I could not see my way to granting him probation. Under the Federal Statute, it is not possible to impose imprisonment as a part of a probationary term and as there was only one count in the indictment, I could not impose a short term on one count and grant probation on another. Noting that the term for armed robbery in California is an indeterminate term of not less than five years nor more than life and that, in actual practice, defendants spend between 36 to 40 months in a State Prison when convicted in a State Court, I imposed a term of five years on this subject. I had in mind that he would probably spend approximately 36 months in a Federal Prison and would then be on conditional release for the balance of the five years.
"I have just been informed by the Warden of McNeil Island Penitentiary that he has received a detainer from you for this prisoner, and the Federal Probation Officer reports that your Department has announced (an) intention to

prosecute (the) defendant under the laws of the State of California as soon as he is released from Federal custody and that the offense for which he is to be prosecuted is the same armed robbery. I will greatly appreciate your reading the Probation Report in this case, a copy of which I enclose herewith, and re-canvass the situation to determine if, in the light of the Court's expectation that this subject will be rehabilitated, (you might) release your detainer so that he may have the benefit of becoming a trusty, be considered for parole, and receive other privileges which are denied Federal prisoners while they are subject to a detainer.
"It will be greatly appreciated if you will let me have word of your decision on this at an early date."
"Very truly yours,"
"Ernest A. Tolin"
"United States District Judge"
"Encl. 1"

12. "United States District Court
Southern District of California
Los Angeles 12, California
Ernest A. Tolin
Judge"
"March 9, 1955"
"Honorable S. Ernest Roll
District Attorney
County of Los Angeles
600 Hall of Justice
211 West Temple Street
Los Angeles 12, California
"Re: Manuel Duran Candelaria
"Dear Mr. Roll:
"The above named subject was prosecuted in this Court upon a charge of robbery of a National Bank with the use of a dangerous weapon. He entered a plea of Guilty and, on February 7th, I sentenced him to the custody of the Attorney General for a period of five years. I had in mind that the sentence usually given for armed robbery in California is confinement for an indeterminate period of not less than five years nor more than life, and that the time actually served is ordinarily between 36 to 40 months in a State Prison. I had in mind, also, that in the light of all the circumstances of this man's past life and the incidents of his offense, that he is not likely to be

left a form letter [13] and indicated his office refused to recall the detainer.

In the early days of the Union it was generally thought prosecution by one of

a repeater, and rehabilitation is anticipated. The prisoner is presently confined in McNeil Island Penitentiary.

"I have just received word that a detainer has been placed on him indicating that he will be prosecuted in the State Courts for the same transaction.

"It will be greatly appreciated if you will give personal attention to the Probation Report, a copy of which is enclosed herewith, as well as to the facts in your possession, and advise me whether you can or cannot, see your way to removal of the detainer so that this prisoner may, if the detainer be removed, have the benefit of full rehabilitation treatment at McNeil Island Penitentiary. It is my understanding that he cannot become a trusty and cannot be assigned to work projects outside the prison proper while he is subject to a detainer."

"Very truly yours,"
"Ernest A Tolin"
"United States District Judge"
"Encl. 1"

13.
"* * * "S. Ernest Roll "* * *
District Attorney
County of Los Angeles
Office of the District Attorney
600 Hall of Justice
Los Angeles 12, California
MUtual 2141
"In re: People v.
"Dear Sir:
"We have received your letter asking that this office recall the 'detainer' or warrant forwarded by law enforcement officers of Los Angeles County to the authorities where the above named defendant is held.

"Under 'detainer' procedure in this state, the police department of a city where an offense is allegedly committed (or the sheriff of this county where the offense is committed in county territory) obtains a felony complaint from the office of the District Attorney. Based upon this complaint a magistrate issues a 'warrant of arrest'. This warrant is then forwarded to the detaining authorities and, at some time within thirty days before the release of the person named therein the police officers (or Deputy Sheriffs—as the case may be) who obtained the warrant then make application to the District Attorney to obtain a 'warrant of extradition'. At that time the District Attorney has the discretion to determine whether or not he will make application to the Governor of the State for extradition of the defendant. If the District Attorney refuses to make said application to the Governor the complaint or indictment, nevertheless, remains on file since the District Attorney is not authorized, under our law, to dismiss either accusatory pleading. If the defendant is thereafter found in the State of California he may be prosecuted.

"The institution of (or refusal to institute) extradition proceedings is determined by the District Attorney only at a time when this office is advised by the detaining authorities that within thirty days of said notice the prisoner will be available for return to this jurisdiction. The police agency desiring the prisoner's return then requests this office to make application for the California Governor's warrant. At that time, and only at that time, is consideration given to all factors involved in the further prosecution of the defendant; for example, his conduct and record at the place of imprisonment, and the question of his rehabilitation and safe return to society, and other factors including, of course, voluntary restitution to the victim when this can be, and has been, made. Removal of detainers and extradition matters are not considered at any other time by the District Attorney of this county.

"It is likewise the policy of this office to take no part in matters leading to restitution to the victims in criminal cases. Restitution is a matter solely for the conscience of the person charged with the offense. Restitution neither justifies a dismissal of the charges nor mitigates the offense. This office makes no promise or statement with respect to restitution nor may any be inferred from anything said in this letter, since the matter of extradition is left entirely to the incumbent District Attorney considering the extradition at the time above mentioned (only within thirty days of the prisoner's release— never before that time). It is only then that it may be justly concluded that all facts bearing on the prosecution and extradition which are to be submitted to this office have been received by it.

"Your letter will be placed in the District Attorney's 'Defendant's file' with the complaint, and, at the proper time, such consideration as is justified will be accorded it."

"Yours very truly,"
"S. Ernest Roll
District Attorney"
"By Howard E. Hurd
"Howard E. Hurd, Chief
Complaint Division"
"HEH:hj"
"5C-3-54-Hurd"

two Governments having concurrent jurisdiction was a bar to prosecution by the other. In Houston v. Moore, 1820, 5 Wheat. 1, 72, 18 U.S. 1, 72, 5 L.Ed. 19, Mr. Justice Story wrote that successive prosecutions for a single act, even though by distinct sovereignties, each acting under its own laws would violate both " * * the principles of the common law, and the genius of our free government." On another occasion such a procedure was labeled " * * * contrary to the express letter of the constitution * * * (and) * * * the unerring principles of justice." [14]

█ The Constitution seemed to bear this out [15] and was generally thought to do so until United States v. Lanza [16], in which the two sovereignties doctrine, in combination with the common law concept of crime as an offense against the *sovereignty* of the government, resulted in a different conclusion. In that case, the Court said:

"An act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."

This principle of "letter of the law" construction of a Constitutional safeguard overlooks the Biblical truth that " * * the Letter of the Law Kills but the spirit gives life".[17] The spirit of the rule against double jeopardy for one offense is certainly violated by allowing the State prosecution of this defendant, but the letter of the law permits it. The Court in the Lanza case minimized the possibility of actual double prosecution by the state and federal governments for the same offense. Quoting from Fox v. State of Ohio, 5 How. 410, 46 U.S. 410, 12 L.Ed. 213, they stated:

"It is almost certain, that, in the benignant spirit in which the institutions both of the state and federal systems are administered, an offender who should have suffered the penalties denounced by the one would not be subjected to a second time to punishment by the other for acts essentially the same, unless indeed this might occur in instances of peculiar enormity, or where the public safety demanded extraordinary rigor."

The dissent in the Fox v. Ohio case (Mr. Justice McLean) apparently not as convinced of the "benignant spirit" of all prosecutors, made the following observations:

"The point is not whether a State may not punish an offense under an act of Congress but whether the State may inflict, by virtue of its own sovereignty, punishment for the same act as an offense against the State which the federal government may constitutionally punish.

"If this be so, it is a great defect in our system. For the punishment under the State law would be no bar to a prosecution under the law of Congress. And to punish the same act by the two governments would violate not only the common principles of humanity, but would be repugnant to the nature of both governments. If there were a concurrent power in both governments to punish the same act, a conviction under the law of either could be pleaded in bar to a prosecution by the other. But it is not pretended that the conviction of Malinda Fox under the State law is a bar to a prosecution under the law of Congress. Each government, in pre-

14. Judge Nott dissenting in State v. Antonio, 3 Brev. 562, 578, 3 S.C. 562. The majority thought such an injustice " * * * could not possibly happen * * *."

15. Article V of the Amendments to the United States Constitution provides " * * *

nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * *".

16. United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 142, 67 L.Ed. 314.

17. Second Corinthians 3rd Chapter 6th Verse.

scribing the punishment, was governed by the nature of the offense, and must be supposed to have acted in reference to its own sovereignty.

"There is no principle better established by the common law, none more fully recognized in the federal and State constitutions, than that an individual shall not be put in jeopardy twice for the same offense. This, it is true, applies to the respective governments; but its spirit applies with equal force against a double punishment, for the same act, by a State and the federal government."

The Lanza case received extensive criticism.[18] The State of New York even repealed its prohibition act to prevent such double prosecutions.[19]

A later decision[20] allowing double prosecution for the same offense brought further wide spread public criticism of such procedure.

"It is inconceivable that a Supreme Court—any Supreme Court—should have made such a decision only a few years back. But since Volsteadism became the law of the land many things have changed. The Anti-Saloon League and the other forces backing this most asinine of laws have succeeded in changing the dignity and standing of the judiciary. With this spirit in the courts, it is not surprising that legal doctrines which had no place in justice or in common sense should be enunciated and supported.[21]

"There are other concurrent Federal and State laws, each one subject to the same interpretation, each one certain to drag its unhappy victims back and forth across the street —from one court to another. Thus Prohibition destroys, not only the written, but the unwritten law of the land.

"The Constitution expressly forbids double jeopardy, but in the opinion of the Supreme Court this safeguard is meaningless where one violates both a Federal law and a law of a State. That is, however, much it may be against the spirit of the Constitution or even the traditional custom of courts, which usually have not practiced double jeopardy, this sinister departure from American fairness becomes a terrible reality when the chief tribunal of the land is forced to construe the meaning of concurrent jurisdiction.

"It was this intolerable condition that the makers of the Constitution had in mind when double jeopardy was forbidden. They knew very well that the zealot would never get done persecuting those who opposed him. Yet the United States Supreme Court, finding itself unable to set aside either the sovereignty of the Federal Government or that of the State, sets the Constitution aside at one point to sustain it at another.[22]"

Nevertheless, it has since been well settled that prohibited conduct may give rise to both a State and a Federal prosecution without violation of the *Federal* Constitutional prohibition against being twice put in jeopardy for the same offense.[23]

However, it appears to this Court that it is very doubtful whether the State of California can successfully prosecute this defendant in view of its own constitutional provisions, statutes, and decisions.

18. See E. G. The Lanza Rule of Successive Prosecutions, 32 Col.L.Rev. 1309; 21 Col.L.Rev. 818; 23 Col.L.Rev. 395; 8 Va.L.Reg.(N.S.) 740.

19. N.Y.Laws 1923, Chap. 871, p. 1690.

20. Hebert v. Louisiana, 1926, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270.

21. Baltimore Sun, as quoted in the Literary Digest, Nov. 20, 1927, p. 18.

22. St. Louis Post-Dispatch as quoted in Literary Digest, Nov. 20, 1927, p. 18. See also, 12 Cornell L.Q. 212; 7 Boston L. Rev. 57.

23. Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640.

The California Constitution, Article 1, § 13, Clause 4, provides:

"* * * No person shall be twice put in jeopardy for the same offense; * * *."

This Constitutional provision has been implemented by several statutory provisions:

Calif. Penal Code, § 687:

"Second prosecution for the same offense prohibited. No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted."

Calif. Penal Code, § 793:

"Conviction or acquittal in another state (or country) a bar, where the jurisdiction is concurrent. When an act charged as a public offense is within the jurisdiction of another state or country, as well as of this state, a conviction or acquittal thereof in the former is a bar to the prosecution or indictment therefor in this state."

Calif. Penal Code, § 656:

"Foreign conviction or acquittal (a defense). Whenever on the trial of an accused person it appears that upon a criminal prosecution under the laws of another state, *government*, or country, founded upon the act or omission in respect to which he is on trial, he has been acquitted or convicted, it is a sufficient defense." (Emphasis supplied.)

Calif. Penal Code, § 1023:

"(Effect of conviction, acquittal or jeopardy as bar.) When the defendant is convicted or acquitted or has been once placed in jeopardy upon accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

The Supreme Court of California has recently applied one of these Statutes to prevent a miscarriage of justice similar to that attempted here. In Coumas v. Superior Court, 1948, 31 Cal.2d 682, 192 P.2d 449, the Supreme Court, in an unanimous opinion, issued a writ of prohibition on the authority of Calif.Penal Code, § 793, restraining the Superior Court from proceeding with the trial of a defendant for an alleged murder committed in California, where it was shown that the defendant had been previously convicted of manslaughter in Greece on the same charge and served over four years in a Greek prison as punishment.

In construing and applying an almost identical statute as Calif.Penal Code, § 656, The Criminal Court of Appeals of Oklahoma held that such a statute barred a state action where the defendant had been previously convicted and punished for the same offense by the Federal government. The word "Government" was interpreted to include the Federal government.[24]

In Griffin v. State, 57 Okl.Cr. 176, 46 P.2d 382, 386, the court said concerning the statute:

"Our statute above quoted is susceptible of but one construction. And a conviction in a federal court for the same act as charged in a prosecution in a state court is a conviction under the laws of another 'government' within the meaning of the statute; and by virtue of the statute alone such conviction is a complete defense to a prosecution for the same act or omission in the courts of this state."

24. La Forge v. State, 1924, 28 Okl.Cr. 37, 228 P. 1111. See, also, State ex rel. Cobb v. Mills, 1945, 82 Okl.Cr. 155, 163 P.2d 558, rehearing denied 167 P.2d 669, in which the La Forge case is reaffirmed and the court holds that a previous conviction in a military court will bar a state prosecution for the same offense. To same effect as Coumas and La Forge, see People v. Spitzer, 148 Misc. 97, 266 N.Y.S. 522, which similarly interprets a New York statute.

In generally reflecting on such statutes and their obvious meritorious nature, the court said in the Spitzer case [148 Misc. 97, 266 N.Y.S. 528]:

"The right of a defendant to be tried only once for the same offense has long been recognized and cautiously guarded by the common law among all English-speaking nations, and has been restated and preserved to us by our Constitution, as well as by various statutes; and the rule that safeguards this ancient and important right should not be so attenuated and hedged about by technicality and refinement as to render its application difficult, or its security uncertain. The defendants participated in but a single transaction, and the acts for which they are indicted here are precisely and exclusively the facts upon which they were convicted and sentenced in the federal court. It is the spirit and purpose of the laws of New York that for the same acts and upon the same evidence a defendant shall not be twice put in jeopardy. The former conviction in the federal court is a bar to a further prosecution of the indictment here." This language quoted with approval in State ex rel. Cobb v. Mills, 1946, 82 Okl. Cr. 155, 163 P.2d 558, 167 P.2d 669.

However, this Court must presume that the District Attorney of Los Angeles County knows the law in the Court where he practices and that the use of the Detainer in this case is a step in an *actual* prosecution and not merely an attempt to harass the defendant and embarrass the correctional process of Federal penal treatment. It has previously come to the Court's attention that after some prisoners have served their extended and extra oppressive Federal terms because of such detainers, the State then never has prosecuted them.[24.5]

Attempts at rehabilitation, treatment, and a gradual, supervised readjustment to free life are, in such cases, obviously completely defeated.

The universal effect of these detainers, however, regardless of the intent, is to stultify the Federal course of treatment designed to reform the offender during his incarceration.

The "Handbook on Interstate Crime Control"[25] published as a result of and to declare the conclusions of the Second Annual Meeting of Administrators of the Interstate Compact for the Supervision of Parolees and Probationers in 1947, contains this explanation of, and comment on, detainers of the type placed against this defendant by the Los Angeles County prosecutor:

"A detainer may be defined as a warrant filed against a person already in custody with the purpose of insuring that, after the prisoner has completed his present term, he will be available to the authority which has placed the detainer. Wardens of institutions holding men who have detainers on them invariably recognize these warrants and notify the authorities placing them of the impending release of the prisoner. Such detainers may be placed by various authorities under varying conditions. For example, detainers may arise when an escaped prisoner or parolee commits a new crime and is imprisoned in another state, or detainers may be placed by various authorites against a man not previously imprisoned who commits a series of crimes in different jurisdictions.

"During the past two decades great progress has been made in penal treatment, by putting into everwidening practice the ideas that thinking penologists have striven for centuries to realize. We know

---

24.5 Note policy of District Attorney's office not to make final determination as to prosecution until 30 days before "delayed" release of defendant. See Footnote 13.

25. Chap. V, published by Interstate Commission on Crime.

now that the prison administrator's task is to rehabilitate the offender and to make plans for him to return to the community as a self-respecting, law-abiding citizen. However, this task is difficult to accomplish in many cases because we have allowed the detainer, inherited from medieval thinking, to remain in our law enforcement system without making adjustments necessary to prevent hampering of the modern correctional program.

"While it would seem proper that authorities in quest of a violator of the law should have every assistance in returning him to their jurisdiction, nevertheless the detainer system now operates to the detriment of society all too often. The difficulties inherent in the existing detainer system affect the judges, the institutional officials, the paroling authorities and the individual himself.

"The prison administrator is thwarted in his efforts toward rehabilitation. The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is defeated.

"The sentencing judge is likewise often thwarted by the detainer system. The enlightened judge knows that his part is to consider the set of circumstances and the course of criminal action that brought the offender before him, and to determine a suitable sentence for the necessary correctional treatment of the offender. Often in a short course of criminal action, the offender has committed offenses in several jurisdictions as well as committing federal offenses. The judge is at a loss when faced with detainers already filed, and with the possibility of other detainers. A rather long sentence may be indicated, but the judge hesitates to give such a sentence if the offender is going to serve subsequent sentences, or if he stands to lose the privilege of parole because of a detainer. The incidental first offender may, and sometimes does, serve years in prison because he has violated the law in several jurisdictions, although only a short sentence or probation would accomplish the necessary rehabilitation. It is obvious that proper sentencing, as well as proper correctional treatment, is not possible until the detainer system is modified. Ironically, society, in collecting its debt from the offender under the detainer system, is the real loser. Much money is spent in unnecessary extra periods of correctional treatment, and embittered offenders become recidivists, pyramiding the expense of law enforcement."

Another phase of the problem is the application (or here the violation) of the fundamental principle that the Government (both State and Federal) is traditionally and constitutionally divided into three separate departments, the Executive, Legislative and Judicial. The District Attorney is within the Executive Department and has not been delegated Judicial duties. These are supposedly exercised exclusively by the Judiciary. This is particularly true in matters of sentence in Federal practice where there is no indeterminate term. The offender's period of imprisonment (except for possible parole) is fixed to the very day by the sentencing judge. The power to fix

 

the sentence carries with it the duty to consider many factors, some of which are brought to the court's attention by the probation officer's confidential report and, hence, unknown to the State prosecutor's office. Not having the duty of appraising the case which pends before the United States Court, the local County District Attorney or City Chief of Police should not exercise this power to review and modify, in a very practical sense, whatever sentence is finally determined by the trial Judge, for to do so is to exercise Judicial functions, and in a court of an entirely different sovereignty. When a Federal Judge, acquainted with the type of corrective treatment which will be administered to an offender, determines that five years of it is sufficient, it changes the character of the penalty when local police or prosecutors can administratively place a detainer which will alter the entire course of treatment of the prisoner and keep him from receiving much of what the sentencing Judge intended when the length of term was prescribed. Although such a municipal official acts within his legal authority, his action amounts in practical operation to an impertinent interference with the judgment of the sentencing court by a person who has never qualified as a Judicial officer and whose action in this area is not subject to review like most decisions of a court. The Court is informed that even the lowest ranking police officials can cause such a detainer to be issued, and thus effectively regulate and control the nature and extent of the punishment of an offender. Such a system is characteristic of a well developed police state and it is deplorable that it be permitted in this Nation which is dedicated to preventing the creation of a police state.

Because the action by officials of Los Angeles and California has effectively nullified so many of the beneficial aspects of this Court's judgment which was made after careful consideration, this Court will terminate its efforts to rehabilitate this prisoner and will terminate further Federal supervision. Since local officials have obstructed Federal efforts to properly punish and correct, they may pursue the prosecution they have commenced by their Detainer. The Clerk will present a modified judgment, fixing the term of imprisonment at sixty days.