[Crim. No. 5953. Second Dist., Div. One. Sept. 18, 1957.]

THE PEOPLE, Respondent, v. MANUEL D. CANDELARIA, Appellant.

*Assigned by Chairman of Judicial Council.

J. B. Mandel for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment wherein the defendant was convicted of burglary in the first degree.

In an information filed in Los Angeles County, on December 11, 1956, the defendant was charged with the crime of burglary in that he did on December 10, 1954, enter the Citizens National Trust and Savings Bank of Los Angeles, Lincoln Heights Branch, with the intent to commit a theft, and that he was armed with a deadly weapon (a revolver) at the time. At the arraignment the defendant made a motion to dismiss the action under section 995 of the Penal Code. The motion was denied. A writ of prohibition was sought in the District Court of Appeal, and that was denied. The defendant pleaded not guilty. Counsel and the defend-

ant personally waived a jury trial, and by stipulation, the cause was submitted on the transcript of the testimony taken at the preliminary examination held on November 29, 1956. At a later date, namely on February 11, 1957, the defendant moved the court for a judgment of not guilty on various grounds, but primarily upon the ground that the defendant had been once in jeopardy. The pleas of former jeopardy were ordered *nunc pro tunc* as of the time of the original plea. The court found that the defendant had not been once in jeopardy for the offense charged, and he was found guilty of burglary in the first degree. The defendant has appealed from the judgment and from the order denying him a new trial.

A résumé of the background and evidence of this case is as follows:

The defendant was, on March 17, 1954, convicted of a morals offense (pimping) in Los Angeles County, and was placed on probation for five years. During the probationary period, and shortly before December 10, 1954, the defendant borrowed a revolver from a friend, as he, the defendant, had in mind to hold up a bank. On December 10, 1954, the defendant took the revolver, got into his automobile and started to drive around the streets looking for a suitable bank to hold up. Apparently the branch of the bank heretofore mentioned was selected by the defendant as being the one to proceed with. He parked his car, put the gun in his waistband under a leather jacket he was wearing, walked into the bank and to the window of a teller named Mrs. Holland. The defendant laid a canvas bag on the counter at her window, unzipped his jacket, pulled forth the gun and demanded of Mrs. Holland that she "hand over the cash." She reached into a cash drawer and took out some money, and he then, as she testified, "pushed the gun further up to me and told me not to fool around." She then secured some more money from the cash drawer for the obvious purpose of satisfying the defendant's requests and desires, and for the more important reason of obeying his instructions to the end that she would not get shot. The total amount of cash the teller put out on the counter, and taken by the defendant, was about $950. On the same day, at about 6 o'clock p. m., Officer L. M. Rafferty of the Los Angeles Police Department arrested the defendant at his home, where the defendant made a free and voluntary statement wherein he said, among other things, that he was the one who had held

up the bank; that he had some of the money in his pocket at that very time; that he had spent some of the money during the day and that some of the money was hidden in the house in a boot of his, with the gun which he had used. The officer and the defendant went into the house and located and recovered the gun, some ammunition for the gun, and a substantial part of the money from where the defendant said it would be.

The defendant was then indicted by the federal grand jury, charging him with a robbery of a national bank with use of a deadly weapon. The defendant, in the federal court, pleaded guilty to the charge and although the judge of the court knew that the past life of the defendant was far from exemplary and that the defendant was then on probation for a morals offense (a felony) in the state court, the judge thought that the defendant did "show a record of industry and ambition mixed with bad conduct indicative of immaturity," (*United States* v. *Candelaria,* 131 F.Supp. 797, 798), and on February 7, 1955, sentenced the defendant to the federal prison for a term which the judge had calculated would, with good behavior credits, amount to about 36 months in prison followed by a conditional release. The defendant was 28 years of age at the time of the offense.

The chief of police of Los Angeles or the district attorney of Los Angeles County, or both of them, placed a detainer hold on the defendant with the warden of the federal prison (McNeil Island Penitentiary) where the defendant was incarcerated. The warden in turn advised the judge of the federal court, who had sentenced the defendant, of the hold. The federal judge then wrote letters to the chief of police of Los Angeles and to the district attorney of Los Angeles County, wherein he strongly intimated that it would be well to "re-canvas the situation" to the end that the detainer hold be released. In the letter to the district attorney the judge stated, "that in the light of all the circumstances of this man's past life and the incidents of his offense, that he is not likely to be a repeater"—this in the face of the fact that the defendant was already an admitted repeater. There was no forthcoming indication that the detainer hold would be released by the California authorities, pursuant to the letters, and the federal judge thereupon, on his own motion, directed that the defendant be returned to his court for further proceedings. At a hearing on April 4, 1955 (*United States* v. *Candelaria, supra,* p. 807), the federal judge

held that "(b)ecause the action of officials of Los Angeles and California has effectively nullified so many of the beneficial aspects of this Court's judgment . . . this Court will terminate its efforts to rehabilitate this prisoner and will terminate further Federal supervision. Since local officials have obstructed Federal efforts to properly punish and correct, they may pursue the prosecution they have commenced by their Detainer. The Clerk will present a modified judgment, fixing the term of imprisonment at sixty days." This was in the face of an earlier determination in the same opinion by the federal judge that the California prosecution would probably not be successful, and the defendant be thereby released into society after serving 60 days in jail for an armed robbery of a national bank, the judge saying in that connection (p. 803), ". . . it appears to this Court that it is very doubtful whether the State of California can successfully prosecute this defendant in view of its own constitutional provisions, statutes and decisions."

The defendant was then charged with the robbery in an information filed in Los Angeles County, and was convicted. The defendant was sentenced to the state prison, and at the same time his probation on the prior state conviction of pimping was revoked and he was committed to prison, the terms or sentences of the two offenses to run concurrently. That judgment was reversed in *People* v. *Candelaria*, 139 Cal.App.2d 432 [294 P.2d 120], because of the provisions of section 656 of the Penal Code, and not upon any constitutional ground, the court holding (at p. 441) : "The judgment is reversed, and the superior court is directed to determine, as a matter of law, that the previous federal conviction is a sufficient defense."

The appellant contends that his conviction presently constitutes double jeopardy in violation of the federal and state Constitutions and the statutory laws, and that appellant has been subjected to cruel and unusual punishment in violation of the federal Constitution.

The due process clause of the Fourteenth Amendment, United States Constitution, does not bar the present action on the grounds of double jeopardy, nor is the prohibition found in the California Constitution, article I, section 13, clause 4, a bar to this action. (*People* v. *Candelaria, supra.*) In the case before us the defendant was charged with burglary, and not robbery, and the two offenses are very different in many respects. The federal government charged

the defendant with robbery, which crime has many elements, such as a forcible taking, which are not associated with the crime of burglary. In the burglary case the essence of the offense is that the defendant enter the bank with the intention to steal, which element is not at all necessarily associated with robbery. All of the elements of the one crime are not included in the other.

██ It is of no comfort to the defendant that both crimes arose from the same series of acts, because double jeopardy will not lie unless all of the elements of the one crime are included in the other. (*People* v. *Herbert*, 6 Cal.2d 541, 545 [58 P.2d 909] ; *Rodriguez* v. *Superior Court*, 27 Cal.2d 500, 501-502 [165 P.2d 1].)

██ Further, in this state it has been held several times that robbery and burglary may both be committed in the same transaction and a culprit may be prosecuted for both. (*People* v. *Miller*, 129 Cal.App.2d 305, 309 [276 P.2d 846] ; *People* v. *White*, 115 Cal.App.2d 828, 832 [253 P.2d 108] ; *People* v. *Finkel*, 94 Cal.App.2d 813, 817 [211 P.2d 888] ; *People* v. *Brain*, 75 Cal.App. 109, 110 [241 P. 913].)

Neither are the provisions of section 656 of the Penal Code of any assistance to the defendant in this proceeding, for that section provides, in effect, that the federal prosecution for robbery is a bar to a further prosecution for the robbery, but not otherwise. The ''act'' spoken of in the statute must be ''the same act.'' The burglary act complained of in the present case, that is, the entering of the building with the intent to commit a theft, is not the same act complained of in the federal court, namely, that he pointed a gun at the teller and by force and fear compelled her to deliver over to him certain monies.

If it is contended by the appellant that the previous conviction of robbery in the state court, and the reversal thereof, constitutes double jeopardy on the burglary charge now before us, and we cannot determine from the briefs of the appellant for certain that such is his contention, we believe, in any event, that there is no merit to such a contention. In the state robbery proceeding, jeopardy never attached—the defendant never was in danger of being convicted of robbery, and the statute clearly exempts him from any such prosecution, as the appellate court so held. (*People* v. *Thomas*, 121 Cal.App.2d 754, 757 [264 P.2d 100] ; *People* v. *Terrill*, 133 Cal. 120, 128-129 [65 P. 303] ; *People* v. *Tong*, 155 Cal. 579, 582-583 [102 P. 263, 132 Am.St.Rep. 110, 24 L.R.A.N.S.

481].) There is no constitutional prohibition in either the federal or the state Constitutions to the proceedings as held in this instance.

The defendant is not being punished twice for the same act or acts. He spent about 60 days in the federal prison (from February 7, 1955, the date of the sentence in the federal court, to April 4, 1955, the date of the federal judge's opinion modifying his previous orders), and he has spent or is spending some time in prison for pimping, but he has not spent any time in any prison for burglary, which, as pointed out heretofore, consists of an entirely different act than the act committed in the robbery matter. ▇ As said by the court in *People* v. *Coltrin,* 5 Cal.2d 649, at pages 660-661 [55 P.2d 1161]:

" 'The constitutional provision referred to relates to a second jeopardy for the same offense. Section 654 of the Penal Code does not apply to statutes which do not make an act or omission punishable in different ways but which name different acts and different offenses, and punish each act separately. (*People* v. *Mehra,* 73 Cal.App. 162 [238 P. 802]. . . . ) If the act involved in one charge is necessarily involved in the other and is merely incidental to that charge but one offense is committed and it cannot be carved into two offenses in order to inflict a double punishment. (*People* v. *Mazzola,* 99 Cal.App. 682 [279 P. 211]. . . .) ▇ But where the two offenses are entirely separate and distinct and the one is not necessarily included in the other, a prosecution for the one is no bar to a prosecution for the other even though the same testimony may be applicable to both. (*In re O'Connor,* 80 Cal.App. 647 [252 P. 730]. . . .) In that case, the court said: "While a single act may be an offense against two statutes, and thus constitute two crimes, if each statute requires proof of a fact additional to those involved in the other an acquittal or conviction of either does not result in the defendant having been in jeopardy for the other." In *People* v. *Kerrick,* 144 Cal. 46 [77 P. 711] . . ., the court said: "To be 'necessarily included' in the offense charged, the lesser offense must not only be part of the greater in fact, but it must be embraced within the legal definition of the greater as a part thereof. 'To entitle a defendant to the plea of *autrefois convict* or *acquit,* it is necessary that the offense charged be the same in law and fact.' (*People* v. *Helbing,* 61 Cal. 620.)" In *People* v. *Day,* 199 Cal. 78 [248 P. 250]

. . . , the court said: "It may be conceded that if the two counts stated precisely the same offense that an acquittal upon one count would operate as an acquittal upon the other count. . . . It is not the great similarity in most of the facts constituting separate offenses but the presence of a fact necessary in one offense and absent in another that determines whether offenses are separate." Among other cases throwing some light on the matter before us may be cited the following: *People* v. *Brain,* 75 Cal.App. 109 [241 P. 913] . . .; *People* v. *Johnson,* 82 Cal.App. 411 [256 P. 273] . . .; *People* v. *McFarlan,* 126 Cal.App. 777 [14 P.2d 1066] . . .' "

█ The appellant further contends that his conviction in the burglary case augments the sentence originally imposed and constitutes cruel and unusual punishment. In our opinion, there is no cruel and unusual punishment involved in this case. The robbery sentence in the state court was a nullity—and if you add nothing to nothing, you still have nothing—in other words, you cannot "augment" a nullity. The sentence for the burglary charge is within the provisions of the statute, and will not be held to be regarded as cruel and unusual. (*Moore* v. *Aberhold,* 109 F.2d 729, 732.)

The judge in this case ordered that the sentence in the burglary case should run concurrently with the sentence on the morals charge. It would seem, therefore, as a practical matter, on the face of the record, that the punishment imposed upon this defendant is anything but cruel, and if there is anything unusual about the case, it is not the severity of the sentence.

The judgment and the order denying defendant a new trial are, and each of them, is affirmed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 13, 1957.

---

*Assigned by Chairman of Judicial Council.