[No. B139753. Second Dist., Div. Four. Apr. 18, 2002.*]

THE PEOPLE, Plaintiff and Appellant, v.
INNA GOFMAN et al., Defendants and Respondents.

*Reporter's Note: Opinion following recall of remittitur; original opinion reported at 93 Cal.App.4th 799.

**COUNSEL**

Gil Garcetti, District Attorney, George M. Palmer, Head Deputy District Attorney, Dirk L. Hudson and Abram Weisbrot, Deputy District Attorneys, for Plaintiff and Appellant.

Tracy Green, Jerry B. Marshak and Richard A. Moss for Defendant and Respondent Inna Gofman.

Flier & Flier, Theodore S. Flier and Andrew Reed Flier for Defendant and Respondent Irma E. Palacios.

Koryn & Koryn and Sylvia Koryn for Defendant and Respondent Paul Shvartsburd.

Louis Sepe for Defendant and Respondent Bruce Ankrom.

Pamela Tedeschi for Defendant and Respondent Michael Rosenberg.

Michael P. Judge, Public Defender, Sean K. MacDonald and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent Dmitry Goldman.

## OPINION

**HASTINGS, J.**—The People appeal from trial court orders dismissing various counts of an indictment pursuant to Penal Code section 656.[1] The indictment was brought against respondents Inna Gofman, Irma E. Palacios, Bruce Ankrom, Paul Shvartsburd, Dmitry Goldman and Michael Rosenberg[2] (respondents), among others. The underlying factual basis for the indictment is an alleged conspiracy, and various overt actions taken by respondents, to defraud insurance companies with false claims stemming from eight "staged" automobile accidents. Six of the "staged" collisions also formed the factual basis for a prior federal indictment against the same respondents alleging one count of conspiracy to commit mail fraud and numerous counts for the substantive offenses of mail fraud. Respondents entered guilty pleas on certain of the federal counts, which established the foundation for the motions to dismiss brought pursuant to section 656.

We conclude that the trial court did not err in dismissing the state counts charging conspiracy and insurance fraud which were based on the same "acts" to which respondents pled guilty in the federal action. Accordingly, we affirm the orders of dismissal as to those counts. But the court erred in dismissing two counts of the indictment which related to two accidents not alleged in the federal indictment and in dismissing conspiracy counts against two respondents who were not convicted of conspiracy in the federal action. Accordingly, we reverse with regard to those counts.

### FACTS

#### The Underlying Federal Action

On May 13, 1998, a federal indictment was brought against respondents and eight other defendants. The first count charged all six respondents with

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] The indictment incorrectly spells Gofman's name. Rosenberg is also known as Mikhail Rozenberg.

conspiracy to commit mail fraud (18 U.S.C. §§ 371, 1341). Specifically, it alleged: "2. It was part of the said conspiracy that the defendants: [¶] (a) arranged for false claims to be made against insurance companies based on 'staged' automobile accidents; [¶] (b) recruited others to provide automobiles, covered by insurance, to be used in the staged automobile accidents; [¶] (c) recruited others to pose as occupants of the automobiles used in staged automobile accidents, and to pursue false claims against the insurance companies which insured the automobiles; [¶] (d) staged automobile accidents by purposefully crashing one automobile into another; [¶] (e) recruited lawyers to represent the individuals posing as occupants of the automobiles, and to file false demands against insurance companies; and [¶] (f) recruited chiropractors to provide false billings to attorneys and insurance companies for treatments supposedly rendered to the individuals posing as occupants of the automobiles." It also identified various "overt acts" in support of the conspiracy, which included six staged accidents that are dated and given a shorthand description as follows:

— August 1, 1995, the Miramontes claim.

— January 12, 1996, the Means claim.

— May 15, 1996, the Mendosa claim.

— June 1, 1996, the Jackson claim.

— September 5, 1996, the Martin claim.

— November 27, 1996, the Hurtado claim.

The remaining counts each alleged mail fraud (18 U.S.C. § 1341) and identified a specific act giving rise to the particular count, each of which related to one of the six alleged staged accidents. Specifically, count 6 charged mail fraud by presentation for payment of the settlement check in connection with the Miramontes claim from the accident of August 1, 1995. Count 11 charged mail fraud by presentation of the settlement check in connection with the Means claim from the accident of January 12, 1996. Count 14 charged mail fraud by presentation of the settlement check in connection with the Mendosa claim from the accident of May 15, 1996.

Gofman and Palacios each pleaded guilty to counts 6 and 14 of the federal indictment. Gofman's plea agreement stated that the offense of mail fraud consisted of the following five elements: "(1) Defendant participated in a scheme or plan for obtaining money or property by making false promises or

statements; [¶] (2) Defendant knew or acted with reckless disregard to the fact that the promises or statements were false; [¶] (3) The promises or statements were of a kind that would reasonably influence a person to part with money or property; [¶] (4) Defendant acted with the intent to defraud; [¶] (5) Defendant used, or caused to be used, the mails to carry out an essential element of the scheme." The plea agreement stated that the factual basis for the offense included that Gofman caused a settlement check to be mailed to Farmers, acting "with reckless disregard to the fact that a basis for the underlying claim was false." The plea agreement also stated that Gofman "knew that her demand for settlement to the insurance company would be relied upon by the insurance [company] to pay a claim by a person insured by the company." Gofman subsequently pleaded guilty to count 11.

Shvartsburd, Goldman, Ankrom and Rosenberg each entered a guilty plea to count 1 of the federal indictment charging conspiracy to commit mail fraud.

*The State Action*

On August 5, 1999, a grand jury indicted 49 defendants, including respondents, with 37 counts. The indictment included: counts for conspiracy to commit insurance fraud and grand theft (§§ 182, 550, subds. (a)(1), (3), (5), (b)(1), 487, subd. (a)); counts for the substantive offense of insurance fraud (§ 550, subds. (a)(1), (3), (5), (b)(1)); counts for the substantive offense of false and fraudulent claim (§ 549); and one count for the substantive offense of grand theft of personal property (§ 487, subd. (a)). The various counts related to eight "staged" accidents, the same six alleged in the federal action plus two others.

We summarize the counts challenged on appeal and identify the particular respondents involved in each as follows:

— Count 1 charged all respondents with conspiracy to commit insurance fraud and grand theft in connection with the accident of August 1, 1995, the Miramontes claim in the federal action;

— Count 2 charged insurance fraud against Gofman and Palacios in connection with the accident of August 1, 1995;

— Count 3 charged false and fraudulent claim against Gofman and Palacios in connection with the accident of August 1, 1995;

— Count 10 charged Gofman, Shvartsburd and Ankrom with conspiracy to commit insurance fraud and grand theft in connection with the accident of January 12, 1996, the Means claim in the federal action;

— Count 11 charged Gofman with insurance fraud in connection with the accident of January 12, 1996;

— Count 12 charged Gofman with false and fraudulent claim in connection with the accident of January 12, 1996;

— Count 13 charged Gofman, Palacios, Shvartsburd and Ankrom with conspiracy to commit insurance fraud and grand theft in connection with the accident of May 15, 1996, the Mendosa claim in the federal action;

— Count 14 charged Gofman with insurance fraud in connection with the accident of May 15, 1996;

— Count 15 charged Gofman with false and fraudulent claim in connection with the accident of May 15, 1996;

— Count 16 charged Gofman with grant theft in connection with the accident of May 15, 1996;

— Count 18 charged Shvartsburd, Ankrom and Goldman with conspiracy to commit insurance fraud and grand theft in connection with the accident of June 1, 1996, the Jackson claim in the federal action;

— Count 22 charged Shvartsburd and Ankrom with conspiracy to commit insurance fraud and grand theft in connection with the accident of June 25, 1996, not the subject of a count in the federal action;

— Count 27 charged Shvartsburd and Ankrom with conspiracy to commit insurance fraud and grand theft in connection with the accident of August 8, 1996, not the subject of a count in the federal action;

— Count 30 charged Shvartsburd, Ankrom and Rosenberg with conspiracy to commit insurance fraud and grand theft in connection with the accident of September 5, 1996, the Martin claim in the federal action;

— Count 34 charged Shvartsburd, Ankrom and Rosenberg with conspiracy to commit insurance fraud and grand theft in connection with the accident of November 27, 1996, the Hurtado claim in the federal action.

Pursuant to section 656, Gofman, joined by Palacios, Shvartsburd, Ankrom, Rosenberg and Goldman, moved to dismiss certain state charges against them.

The trial court separately ruled on each respondent. It dismissed counts 1, 2, 3 and 13 against Gofman and Palacios. In addition, it dismissed counts 10

through 12 and 14 through 16 asserted against Gofman. The court dismissed counts 10, 13, 18, 22, 27, 30 and 34 in favor of Ankrom and Shvartsburd. Counts 30 and 34 were dismissed against Rosenberg, and count 18 as to Goldman.[3]

## DISCUSSION

██ The People challenge dismissal of each of the counts referenced above, contending that each of the federal counts differs sufficiently from the state counts so that section 656 is not applicable.

Section 656 provides: "Whenever on the trial of an accused person it appears that upon a criminal prosecution under the laws of another State, Government, or country, founded upon the act or omission in respect to which he is on trial, he has been acquitted or convicted, it is a sufficient defense."

This statute was first analyzed in *People v. Candelaria* (1956) 139 Cal.App.2d 432, 438 [294 P.2d 120] (hereinafter *Candelaria I*). There, the defendant was subject to state and federal prosecutions for the same act of robbing a bank teller on December 11, 1956. He had been previously convicted in federal court of the robbery and raised section 656 as a defense to the state charge. The court determined that application of section 656 depended upon "whether the previous federal conviction was 'founded upon the act' in respect to which the defendant was thereafter tried in the state court." (*Candelaria I, supra,* 139 Cal.App.2d at p. 440.) It concluded in the affirmative: "The only additional element involved in the federal prosecution was that the money belonged to a national bank whose deposits were federally insured. That additional element, regarding the status of title to or insurance on the money, pertained to the matter of jurisdiction of the federal court, and it did not pertain to any activity on the part of defendant in committing the robbery. The physical act or conduct of defendant in taking the money was the same whether the robbery be considered as a federal offense or a state offense. All the acts constituting the state offense were included in the federal offense and were necessary to constitute the federal offense." (*Ibid.*) The court reversed the state judgment of conviction and remanded to the trial court "to determine, as a matter of law, that the previous federal conviction is a sufficient defense." (*Id.* at p. 441.)

Upon remand to the state court, the prosecutor charged Candelaria with burglary in connection with his actions of December 11, 1956. He was

---

[3]Section 1238 authorizes the People to appeal from dismissal of any portion of or all of an indictment.

convicted of burglary and appealed, contending that he should have been acquitted pursuant to section 656. His conviction was affirmed in *People v. Candelaria* (1957) 153 Cal.App.2d 879 [315 P.2d 386] (hereinafter *Candelaria II*, criticized on another point in *In re Dowding* (1961) 188 Cal.App.2d 418, 423-424 [10 Cal.Rptr. 392].) The court concluded that Candelaria was not being punished twice for the same act or acts: "Neither are the provisions of section 656 of the Penal Code of any assistance to the defendant in this proceeding, for that section provides, in effect, that the federal prosecution for robbery is a bar to a further prosecution for the robbery, but not otherwise. The 'act' spoken of in the statute must be 'the same act.' The burglary act complained of in the present case, that is, the entering of the building with the intent to commit a theft, is not the same act complained of in the federal court, namely, that he pointed a gun at the teller and by force and fear compelled her to deliver over to him certain monies." (*Candelaria II, supra,* 153 Cal.App.2d at p. 884.)

Section 656 was later analyzed in *People v. Belcher* (1974) 11 Cal.3d 91 [113 Cal.Rptr. 1, 520 P.2d 385]. There, the defendant was charged with two counts of robbery and one count of assault with a deadly weapon arising out of an incident the evening of October 28, 1970, when he and an accomplice, each brandishing firearms, robbed a federal agent and a state police officer. Belcher had previously been acquitted in federal court on a charge of assault with a deadly weapon upon the federal officer. He unsuccessfully moved the trial court for a dismissal of the three state counts based on his previous acquittal and a jury convicted Belcher of all three state counts. Applying section 656, the Supreme Court reversed the assault conviction: "Under this test, defendant Belcher's conviction on the third count—assault with a deadly weapon upon Officer Johnson—must be reversed. The Attorney General concedes that the state conviction requires proof of the same *acts* by defendant as the federal conviction. Since defendant was acquitted of assault upon Johnson in the federal court, he cannot be convicted for the same assault upon the same person in the subsequent state prosecution." (*People v. Belcher, supra,* 11 Cal.3d at p. 99.) The court concluded that the fact the federal conviction required the additional component that the assault was committed against a federal officer was merely for jurisdictional purposes and did not preclude application of section 656. (*Belcher,* at p. 100.)

But the convictions for robbery were affirmed: "[W]hen we apply the test of section 656 to defendant's conviction upon the first and second counts [of robbery] . . . we reach a different result. A conviction for each of these offenses requires at the very least proof of an important additional act by defendant—the 'taking of personal property in the possession of another' (§ 211)—that need not be proved to establish the federal offense of assault

with a deadly weapon upon a federal officer. Accordingly, the convictions of first degree robbery under the first two counts are not convictions founded upon the same act or omission for which defendant was acquitted in federal court, and these convictions must stand." (*People v. Belcher, supra,* 11 Cal.3d at pp. 100-101, fn. omitted.)

It is clear from the foregoing cases that in applying section 656 we must analyze whether a prior conviction or acquittal is based upon the same "act" or "acts." In that regard, a conspiracy conviction or acquittal from another jurisdiction does not require application of section 656 in connection with a substantive crime charged in California which may be the focus of the conspiracy. "Under federal law, the 'gist' of the conspiracy offense is an unlawful agreement among the conspirators. [Citation.] Thus, 'it is the unlawful agreement and not the overt act which is punished in a conspiracy; . . .' [Citation.] Here, the crucial act for which defendants were prosecuted and convicted in federal court was their agreement in Nevada to commit the California burglary. However, nothing in the record suggests the Nevada agreement was an act necessary to obtain the conviction of any defendant for burglary of the California store." (*People v. Brown* (1988) 204 Cal.App.3d 1444, 1450 [251 Cal.Rptr. 889].)

The same result may obtain in the reverse situation, where the substantive crime is committed in another jurisdiction but a defendant is charged with conspiracy in California. "Criminal conspiracy is an offense distinct from the actual commission of a criminal offense that is the object of the conspiracy. [Citations.] '. . . It does not require the commission of the substantive offense that is the object of the conspiracy. [Citation.] "As an inchoate crime, conspiracy fixes the point of legal intervention at [the time of] agreement to commit a crime," and "thus reaches further back into preparatory conduct than attempt. . . ."' [Citation.]" (*People v. Morante* (1999) 20 Cal.4th 403, 416-417 [84 Cal.Rptr.2d 665, 975 P.2d 1071].)

We now turn to review the present situation.

*The Conspiracy Counts*

The federal conspiracy statute, 18 United States Code section 371, states in pertinent part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

The portions of the California conspiracy statute which were cited in the state indictment, subdivision (a) of section 182, require at least two persons

to conspire "(1) To commit any crime. [¶] . . . [¶] (3) Falsely to move or maintain any suit, action or proceeding. [¶] (4) To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform those promises."

Both statutes are essentially identical. Each requires an agreement to commit an unlawful act and an overt act to complete that same unlawful act. (*United States v. Shabani* (1994) 513 U.S. 10, 14 [115 S.Ct. 382, 384-385, 130 L.Ed.2d 225]; *People v. Superior Court (Shamis)* (1997) 58 Cal.App.4th 833, 842 [68 Cal.Rptr.2d 388].) It is not required that the underlying substantive crime actually be committed.

The trial court dismissed the state conspiracy charges in counts 1, 10 and 13 against Gofman and counts 1 and 13 against Palacios. But neither of these respondents pled guilty to a federal conspiracy count, only federal substantive counts. Thus, the trial court erred in dismissing these counts relating to these respondents.

The trial court did properly dismiss counts 10, 13, 18, 30 and 34 with regard to respondents Shvartsburd and Ankrom, counts 30 and 34 with regard to Rosenberg, and count 18 with regard to Goldman, because each of those counts relate to an accident forming the basis for the federal conspiracy count to which each of these respondents pled guilty. While the federal charges carry the additional element that the United States mail be utilized in connection with the attempt to defraud, we conclude that relates to the jurisdiction of the federal court. But the court erred by dismissing conspiracy counts 22 and 27 against Shvartsburd and Ankrom because those counts allege separate accidents from the federal charges.

*The Substantive Offenses*

The trial court dismissed counts 2 and 3 brought against Gofman and Palacios. Each of those counts alleges the substantive offenses of insurance fraud and false and fraudulent claims, respectively, in connection with the Miramontes claim. Each pled guilty to the federal substantive charges relating to the Miramontes claim, count 6.

The court dismissed counts 11, 12, 14, 15 and 16 brought against Gofman. Counts 11 and 12 were for insurance fraud and fraudulent claims, respectively, in connection with the Means claim. Counts 14, 15 and 16 were for insurance fraud, fraudulent claims, and grand theft, respectively, in connection with the Mendosa claim. Gofman pled guilty to the respective federal substantive counts relating to each of these claims, counts 11 and 14.

The federal mail fraud statute, 18 United States Code section 1341, penalizes "[w]hoever, having devised or intending to devise any *scheme* or artifice *to defraud*, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing. . . ." (Italics added.)

The pertinent California insurance fraud provisions are as follows: "(a) It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following: [¶] (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance. [¶] . . . [¶] (3) Knowingly cause or participate in a vehicular collision, or any other vehicular accident, for the purpose of presenting any false or fraudulent claim. [¶] . . . [¶] (5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim." (§ 550.) Subdivision (b)(1) of section 550 provides: "(b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following: [¶] (1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact."

The state statute for false and fraudulent claim states in pertinent part: "Any . . . person acting in his or her individual capacity, or in his or her capacity as a . . . private employee, who solicits, accepts, or refers any business to or from any individual or entity with the knowledge that, or with reckless disregard for whether, the individual or entity for or from whom the solicitation or referral is made, or the individual or entity who is solicited or referred, intends to violate Section 550 of this code . . . is guilty of a crime. . . ." (§ 549.)

Subdivision (a) of section 487, the state provision under which respondent Gofman was indicted in count 16, sets forth the crime of grand theft. It generally states: "Grand theft is theft committed in any of the following cases: [¶] (a) When the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400). . . ."

That each respondent was charged with more than one substantive state offense does not alter the fact that each charge relates to the same "acts"— that Gofman and Palacios successfully made claim against three insurance carriers for three separate staged accidents. The basis for the federal charges of mail fraud in each count was presentation of the settlement check, the final act of the fraud or grand theft alleged in the federal indictment. The fact that the mail was used to effectuate the fraud or grand theft is merely one additional act that formed the jurisdictional basis for the federal counts. Thus, we conclude the trial court did not err in dismissing these counts.

### DISPOSITION

The orders dismissing counts 2 and 3 with regard to Palacios and 2, 3, 11, 12, 14 and 16 with regard to Gofman are affirmed. The orders dismissing count 18 with regard to Goldman, counts 30 and 34 with regard to Rosenberg, and counts 10, 13, 18, 30 and 34 with regard to Shvartsburd and Ankrom are affirmed. The orders dismissing counts 1, 10 and 13 as to Gofman and counts 1 and 13 as to Palacios, and counts 22 and 27 as to Shvartsburd and Ankrom are reversed.

Vogel (C. S.), P. J., and Epstein, J., concurred.